Betty L. HATTAWAY, et al., Plaintiff,

v.

Quinn A. McMILLIAN, Individually and
as Sheriff of Walton County,
Florida, Defendant.

No. 87–30419–RV.

United States District Court,
N.D. Florida,
Pensacola Division.

June 17, 1994.

Clifford Higby, Bryant, Higby & Williams, Scott W. Clemons, Panama City, FL, for plaintiffs.

Beth F. Jacobi, Miami, FL, for garnishees.

Leonard Dietzen, III, Julius F. Parker, Jr., Parker, Skelding, McVoy, & Labasky, Tallahassee, FL, for defendants.

George Ralph Miller, DeFuniak Springs, FL, for Walton County.

W. Paul Thompson, DeFuniak Springs, FL, for McMillian.

### ORDER

VINSON, District Judge.

This case keeps reappearing, like "some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried."[1] The latest apparition is the Plaintiff's motion for a writ of garnishment or mandamus. (Doc. 244.) The Defendant and the Garnishee received notice of the motion and have responded. For the reasons set forth herein, the mandamus relief requested is GRANTED and the garnishment request is DENIED.

### I. BACKGROUND

The Plaintiff, Betty L. Hattaway, as the duly appointed guardian of the person and property of Noah Lee Laningham, incompetent, holds a final judgment in the amount of $843,603.00 against the Defendant, Quinn A. McMillian, as Sheriff of Walton County, Florida (the "Sheriff"). That judgment is against McMillian as Sheriff, and not individually. The judgment was entered by this Court pursuant to a jury verdict that the Sheriff was liable to Hattaway under a state law negligence claim.

Hattaway has attempted to collect the full amount of her judgment from the Sheriff's insurers. Sheriff McMillian and other Florida sheriffs have set up a self-insurance pool to cover liability claims up to $100,000. This insurance pool is called the Florida Sheriffs' Self Insurance Fund (the "Sheriffs' Fund"). The Sheriffs' Fund has purchased additional, or excess, insurance, in the amount of $1,000,000. The excess insurance covers only liabilities exceeding the amount of $100,000. The effect of this is to provide the Sheriff with a total of $1,100,000 of liability insurance per "occurrence" within the policy period. The excess insurance is provided by a syndicate of insurance carriers, whom I will refer to as the "excess insurance carriers."

After various stays of execution on the judgment, pending appeal of this matter and proceedings in the companion case of *McMillian v. Hattaway*, No. 91–30103–RV, Hattaway has apparently collected that portion of the judgment for which the excess insurance carriers are liable. Hattaway now seeks to collect the final $100,000 of the judgment, plus accrued interest, from either the Sheriff or the Sheriffs' Fund. The Sheriff and the

---

1. *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. ——, ——, 113 S.Ct. 2141, 2149, 124 L.Ed.2d 352, 365 (1993) (Scalia, J., concurring).

Sheriffs' Fund now maintain that Hattaway can collect nothing more than she has already collected from the excess insurance carriers, for reasons that are discussed below.

## II. ANALYSIS

Throughout the post-judgment and appellate proceedings in this case, both this court and the Court of Appeals for the Eleventh Circuit acted on the assumption that the Sheriff, the Sheriffs' Fund, and perhaps even Walton County, were responsible for $100,000 of the $843,603 judgment. Florida's waiver of sovereign immunity statute [§ 768.-28, Fla.Stat.] seemed to dictate that the Sheriff was liable for $100,000 of the judgment, and his excess insurers were liable for the remainder of the judgment, up to, of course, the limit of insurance, which was assumed to be the face amount of the Sheriff's excess liability insurance policy.

Thus, the Eleventh Circuit, in granting in part and denying in part the Sheriff's motion to stay execution pending appeal, stated that "Walton County, which employs Sheriff McMillian, is directly liable for $100,000 of the $843,603 judgment. The remaining $743,603 is recoverable only by act of the Florida Legislature, or against the Sheriff's insurers." (Doc. 244 Ex. F) (citations omitted.) Similarly, in my order extending a stay in this matter, I stated that the Sheriffs' Fund was obligated on the judgment for $100,000, plus interest thereon at 9.2% per annum from December 23, 1988, and the excess insurance carriers were obligated for the remainder of the judgment. (Doc. 210.) Liability for the $100,000 plus interest was not challenged by the Sheriff or the Sheriffs' Fund, except insofar as the Sheriff challenged the jury verdict of liability.

Instead, what was challenged was whether Hattaway's judgment should be limited to $100,000. That question turned on the legal issue of whether the Sheriff, as a result of the Sheriffs' Fund's purchase of excess insurance, had waived his sovereign immunity beyond the statutory waiver (which is limited to $100,000). The Eleventh Circuit answered that question adversely to the Sheriff in *Hattaway v. McMillian*, 903 F.2d 1440 (11th Cir.1990). The Eleventh Circuit rejected the Sheriff's claim that judgment should be limited to $100,000, and held as follows:

> The statutes that allow the sheriffs to purchase [excess liability] insurance have been interpreted as a waiver of sovereign immunity up to the amount of the policy. Consequently, the fund's purchase of the $1,000,000 policy constitutes a waiver of sovereign immunity up to that amount. The district court correctly refused to limit the judgment to $100,000.

*Id.* at 1455 (footnotes omitted).

The Sheriff and the Sheriffs' Fund now argue that neither of them is liable to Hattaway for the unsatisfied portion of the judgment. Their argument is that the Sheriff only waived his sovereign immunity in an amount up to the limits of his insurance coverage, so that is the limit of his liability. Because the Sheriff's insurance allegedly has been exhausted by the payment of attorney's fees and defense costs (in addition to the amount of the judgment), the judgment has been satisfied, according to the Sheriff and the Sheriffs' Fund.

The key point in this argument is that the Sheriff's insurance apparently operates somewhat differently than I was earlier led to believe. It was heretofore assumed by this court and by the Eleventh Circuit that the Sheriffs' Fund indemnified the Sheriff for liabilities up to $100,000, and the excess insurance purchased by the Sheriffs' Fund indemnified for $1,000,000 of liability in excess of the underlying limit of $100,000. This would mean that the Sheriff had purchased a total of $1,100,000 of liability insurance.

■ The amount of the Sheriff's liability insurance is the magic number in the case, for it is that amount that determines the extent of the Sheriff's waiver of sovereign immunity. This was explained in the Eleventh Circuit's opinion in this case, and by a key decision of the Supreme Court of Florida on which the Eleventh Circuit relied. By statute, the sovereign immunity of an entity such as the Sheriff is waived for tort claims up to $100,000. § 768.28(5), Fla.Stat. When, however, a political entity such as the Sheriff purchases liability insurance, that

purchase constitutes a waiver of sovereign immunity up to the limits of insurance coverage. *Hattaway, supra*, 903 F.2d at 1453; *Avallone v. Board of County Comm'rs*, 493 So.2d 1002, 1004–05 (Fla.1986).

Because the insurance-purchase waiver is "in addition to" the general statutory $100,000 waiver [*Hattaway, supra*, 903 F.2d at 1453], the amount of the Sheriff's waiver of sovereign immunity is equal to the amount of insurance coverage, or $100,000, whichever is greater. Because the Eleventh Circuit was led to believe, as was I, that the Sheriff had purchased a total of $1,100,000 of liability insurance, the Eleventh Circuit concluded its opinion by saying that "the [Sheriffs' Fund's] purchase of the $1,000,000 policy constitutes a waiver of sovereign immunity up to that amount." *Id.* at 1455.

The fly in the ointment is that the Sheriff's insurance does not *indemnify the Sheriff for liabilities* up to $1,100,000. Instead, the Sheriff's insurance indemnifies the Sheriff for liabilities up to that amount, *including defense costs,* which include attorney's fees and court costs. The amount of the Sheriff's insurance is, of course, a matter of contract between the Sheriff and his insurers. Both the Sheriffs' Fund contract and the excess liability insurance contract expressly provide that their limits of coverage include loss adjustment expenses and defense costs, and that such costs and expenses are included *within* the stated limits of the policy, and *not in addition to* the stated limits.

The effect of this is that the Sheriff has actually purchased indemnity for $1,100,000, less defense costs, which include attorney's fees and costs. Thus, if the insurers expend $300,000 in costs adjusting and defending a covered claim, then the Sheriff has only $800,000 of indemnity available for that claim. In such a case, $800,000 would be the amount of insurance coverage available to the Sheriff to pay a claim, so $800,000 would be the extent of the waiver of sovereign immunity. Once the tort plaintiff in that example had collected $800,000 on a judgment arising out of that claim (regardless of whether the judgment exceeded $800,000, or exceeded $1,100,000), then the judgment against the Sheriff would have been satisfied.

This is because the Sheriff's liability for the claim can be no greater than the amount of his waiver of sovereign immunity, and the amount of that waiver is set by the limit of insurance coverage available for the claim ($800,000 in this example).

To carry the example one step further, suppose that the defense costs and adjustment expenses for the above claim totaled $1,050,000. That would mean that the Sheriff would have only $50,000 of indemnity available to cover the claim. Because that amount ($50,000) is less than the statutory $100,000 waiver, the amount of the Sheriff's waiver of sovereign immunity for that claim would be $100,000 (the greater of the statutory $100,000 or the amount of insurance coverage). Once the tort claimant in that case collects $100,000, that satisfies the judgment against the Sheriff.

■ Now to the specifics of this case: It is agreed that the amount of insurance available to satisfy Hattaway's claim far exceeded $100,000; in fact, Hattaway has already collected over $700,000 from the excess insurance carriers. Thus, the Sheriff has waived sovereign immunity for this claim to the extent that insurance coverage is available, since that amount exceeds $100,000. The amount of the Sheriff's waiver for Hattaway's claim can only be determined by subtracting the amount of loss adjustment expenses and defense costs from $1,100,000 (the absolute limit of the Sheriff's insurance). It may be that that amount—the waiver of sovereign immunity—exceeds the amount that Hattaway has already collected from the excess insurance carriers. If that is indeed the case, then Hattaway would be entitled to collect more of the judgment than she already has.

The way the Sheriffs' Fund and the excess insurance operates, however, is that if any insurance coverage remains available, it would only be through the excess insurance carriers. This is because the Sheriffs' Fund's coverage has been exhausted—it has already paid out over $100,000 in attorney's fees and costs in defending Hattaway's claim, and the contractual limit of its liability to the Sheriff was $100,000. The Sheriff and Sheriffs' Fund, then, are correct to argue that the

Sheriffs' Fund, as a matter of contract, owes nothing more to the Sheriff for Hattaway's claim.

The significance of that fact is that it effectively undercuts the logic behind much of the post-judgment proceedings to date. In particular, the Sheriff's argument, at this late date, reveals a flaw in the order I entered on July 3, 1991. That order set forth clearly the respective shares of the judgment for which the Sheriffs' Fund and the excess insurance carriers wou'd be liable.

█ The final ingredient in this unsavory brew is the fact that the excess insurance carriers paid their fractional shares of the judgment according to the formula set forth in my order of July 3, 1991, and have apparently been released by Hattaway. If the excess carriers were released by Hattaway, she can no longer look to them for payment of whatever portion of the judgment they might otherwise remain liable for in light of the argument the Sheriff and the Sheriffs' Fund now makes.

The Sheriff, however, can still look to the excess insurance carriers for indemnification, to the extent that the $1,000,000 of excess insurance has not been exhausted on Hattaway's claim. The question then becomes how to compel payment of whatever amount of excess insurance coverage (if any) remains.

Under Rule 69 of the Federal Rules of Civil Procedure, proceedings supplementary to and in aid of a federal district court judgment are conducted in accordance with the practice and procedure of the state in which the court sits. Since Hattaway's motion is supplementary to and in aid of the judgment rendered by this court, Hattaway's right to garnishment or mandamus is controlled by the law of Florida.

█ Florida law provides a judgment creditor with a right to a writ of garnishment "to subject any debt due to defendant by a third person, and any tangible or intangible personal property of defendant in the possession or control of a third person." § 77.01, Fla.Stat. (1991). Indebtedness due an insured under an insurance policy is subject to garnishment by a judgment creditor of the insured. *See Gonzalez v. General Accident Fire & Life Assurance Corp.,* 216 So.2d 797 (Fla. 3d DCA 1968); *Oper v. Air Control Prods., Inc.,* 174 So.2d 561 (Fla. 3d DCA 1965). However, the judgment creditor in a garnishment action stands in the shoes of the judgment debtor and can only recover that which the debtor itself could recover from the garnishee. *Florida Pub. Serv. Comm'n v. Pruitt, Humphress, Powers & Munroe Advert. Agency, Inc.,* 587 So.2d 561, 563 (Fla. 1st DCA 1991); *Royal Indem. Co. v. Rexford,* 197 F.2d 83, 85 (5th Cir.1952) (applying Florida law).

The Sheriffs' Fund's obligations to the Sheriff are a matter of contract. The contract in effect between the Sheriff and the Sheriffs' Fund at the time of the incident that gave rise to the judgment against the Sheriff is the Florida Sheriffs' Self Insurance Fund Agreement (the "Fund Agreement") (Doc. 245 Ex. B). The Fund Agreement limits the Sheriffs' Fund's liability to $100,-000 for a claim or judgment by any one person. As is discussed above, claims expenses, which include attorney's fees and costs incurred in defending an action against the Sheriff, are included in this liability limitation. That is, the Sheriff's Fund is not contractually obligated to pay $100,000 of a judgment *and* pay the Sheriff's attorney's fees and court costs. The Fund Agreement provides that "the Fund shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Fund's liability or aggregate liability has been exhausted by payment of judgments or settlements or claims expenses."

█ It is undisputed that the Sheriffs' Fund has already paid out over $100,000 in attorney's fees and costs that were incurred in defending the claim against the Sheriff. This means that the Sheriffs' Fund's contractual liability to the Sheriff with respect to Hattaway's claim has been exhausted. Since there is no debt due the Sheriff by the Sheriffs' Fund, Hattaway—who, as judgment creditor, stands in the shoes of the Sheriff—is not entitled to a writ of garnishment against the Sheriffs' Fund. *See Florida Pub. Serv. Comm'n, supra.* Simply put, there is no debt to be garnished.

Now to the question of mandamus. It is the law of Florida that mandamus is an appropriate remedy to force a recalcitrant public official to obey the law. Specifically, mandamus is available to require such an official to satisfy a judgment against him. *See City of Ocoee v. State ex rel Harris,* 155 Fla. 514, 20 So.2d 674, 675 (1945); *Northern Coats v. Metropolitan Dade County,* 588 So.2d 1016 (Fla. 3d DCA 1991); *Connor v. Mid–Florida Growers, Inc.,* 541 So.2d 1252 (Fla. 2d DCA 1989); *Navarro v. Bouffard,* 522 So.2d 515 (Fla. 4th DCA 1988); *Pierce v. Town of Hastings,* 509 So.2d 1134 (Fla. 5th DCA 1987). Thus, mandamus is available to compel the Sheriff to pay whatever portion of the judgment remains unsatisfied subject, of course, to the limits of the waiver of sovereign immunity.

The record does not reflect the amount of the Sheriff's unexhausted liability insurance, which by statute is the same as the waiver of sovereign immunity in this case. It may be the case that the Sheriff has exhausted all of the insurance available to him. The record only shows that the Sheriffs' Fund's basic coverage has been exhausted, and that at least $743,603 of the remaining excess coverage ($1,000,000) has been exhausted. If the excess carriers have paid a total of $1,000,000 in connection with Hattaway's claim, including payment of Hattaway's judgment, plus loss adjustment expenses and defense costs, then they have satisfied their contractual obligation and the Sheriff's insurance coverage has been exhausted. If, on the other hand, the excess insurers have not expended a total of $1,000,000 in connection with Hattaway's claim, then the insurance coverage remains available to the Sheriff. To the extent that coverage remains, the Sheriff has waived his sovereign immunity and is liable for that amount. Mandamus is available to compel payment of that amount (if there is such an amount).

When a petition for mandamus sets forth a legally sufficient claim for relief, the court must issue an "alternative writ of mandamus." *Holcomb v. Department of Corrections,* 609 So.2d 751, 753 (Fla. 1st DCA 1992); *Times Publish. Co. v. City of St. Petersburg,* 558 So.2d 487, 493 (Fla. 2nd DCA 1990);

*Connor v. Mid–Florida Growers, Inc.; supra;* Fla.R.Civ.P. 1.630. An alternative writ is essentially an order directed to the respondent to either perform the neglected act or to show cause why a final, peremptory writ of mandamus should not issue. *Holcomb, supra; Times Publish. Co., supra.* I find that Hattaway's motion states a legally sufficient claim for relief, so Hattaway is entitled to an alternative writ of mandamus.

### III.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) The motion for writ of garnishment is DENIED.

(2) On consideration of the motion for writ of mandamus, Quinn A. McMillian, as Sheriff of Walton County, shall pay to Betty L. Hattaway, as duly appointed guardian of the person and property of Noah Lee Laningham, incompetent, the sum of $100,000 plus interest thereon at 9.2% per annum from December 23, 1988, to the present, but only to the extent that the excess insurance carriers remain contractually obligated to indemnify the Sheriff for liability arising out of Hattaway's claim against the Sheriff. The Sheriff shall be compelled to pay only that amount for which he is contractually entitled to indemnification from the excess insurance carriers. As an alternative to making such payment, the Sheriff shall show cause, if any, why a final writ of mandamus should not issue.

DONE AND ORDERED.