918 So.2d 342 (2005)
Tom GALLAGHER, as Insurance Commissioner and State Treasurer, and Risk Management Trust Fund, Appellants/Cross-Appellees,
v.
Michael C. DUPONT, Appellee/Cross-Appellant.
No. 5D04-3155.
District Court of Appeal of Florida, Fifth District.
December 9, 2005.
Rehearing Denied January 20, 2006.
*344 Charles J. Crist, Jr., Attorney General, and James A. Peters, Special Counsel, and J. Clifton Cox, Assistant Attorney General, Tallahassee, for Appellants/Cross-Appellees.
James N. Charles, Celebration, for Appellee/Cross-Appellant.
THOMPSON, J.
Michael C. Dupont sought to enforce by writs of mandamus and garnishment a federal § 1983 civil rights judgment for $527,670.70 obtained by Coblentz[1] agreement against the Estate of Sebastian Tangusso, a former state employee. The circuit court granted final summary judgment in favor of Tom Gallagher, in his capacity as Insurance Commissioner and State Treasurer, and head of the State Risk Management Fund ("Fund"), but denied their motion for attorney's fees under section 57.105, Florida Statutes (2003). Gallagher and the Fund appeal the denial of attorney's fees, and Dupont cross-appeals the final summary judgment. We reverse the final summary judgment and affirm the denial of section 57.105 fees.

Background
The civil rights lawsuit arose in the wake of "Operation Handyman," a reverse sting operation conducted jointly by the Department of Business and Professional Regulation ("DBPR") and the State Attorney's Office in 1994. Dupont, a self-employed painter living in Daytona Beach, placed an advertisement in the "Pennysaver" to perform roof, concrete, and acoustic ceiling cleaning and painting that caught the attention of DBPR in its effort to target unlicensed contractors. Sebastian Tangusso was the lead DBPR investigator for Operation Handyman.
DBPR unsuccessfully attempted to lure Dupont into agreeing to perform contracting services for which he was unlicensed. Tangusso nevertheless swore out an arrest affidavit that resulted in Dupont's forcible surprise arrest and prosecution under the unlicensed contractor statute. During one court proceeding, he was arrested and handcuffed again because the original arrest warrant had remained active. After the trial court acquitted Dupont of the charges, he filed the § 1983 federal civil rights lawsuit.
The Fund retained the services of the Attorney General to defend Tangusso in the civil rights lawsuit. The Fund provides federal civil rights liability insurance for employees under section 284.30, Florida Statutes (2001), and owed a duty to defend its insured.
While the civil rights lawsuit was pending, Tangusso died, and the Attorney General filed a suggestion of death. The district *345 court subsequently entered an order substituting the Estate of Tangusso. A newly assigned assistant attorney general agreed to provide any information the agency had in Tangusso's personnel file regarding his Estate. A week later, however, the assistant attorney general advised counsel she had not obtained any information regarding the Estate and further questioned whether the Attorney General should represent it.
Dupont obtained a clerk's default against the Tangusso Estate. His counsel learned that probate of the Tangusso Estate had closed, and the Estate's attorney advised that no one from the State had ever notified him of a pending lawsuit against Tangusso at the time of his death.
The Attorney General was refusing to defend the Tangusso Estate, but the office remained attorney of record for the Estate. Upon Dupont's motion for evidentiary hearing to determine the amount of damages and for entry of default judgment, the federal district court noticed an evidentiary hearing to determine damages and for entry of a default judgment. At the hearing, the assistant attorney general present filed a "Notice to the court on the status of defense representation," requesting to be relieved from any appearance because no defendant was entitled to representation by the Attorney General. The Attorney General asserted that its representation did not extend to private estates of deceased employees or their personal representatives. At the hearing, the district court declined to proceed with the evidentiary hearing and instead directed counsel to provide memoranda to the court outlining their respective positions regarding representation of the Tangusso Estate.
In light of the delay in ruling on Dupont's motion for default final judgment, the Estate's and Dupont's counsel began discussing the option of a Coblentz agreement and consent judgment. The district court subsequently granted the Attorney General's motion to withdraw as counsel for the Tangusso Estate. The district court also denied without prejudice Dupont's motion for default judgment.
In July 2002, Dupont and the personal representative of the Estate executed a written settlement agreement. The probate court entered an order reopening the Estate and approved the stipulation. On 6 September 2002, the district court granted Dupont's motion for entry of final order based on the settlement and entered judgment for Dupont in the amount of $527,670.70. The Estate agreed to the entry of a judgment against it and in favor of Dupont for $527,670.70; assigned to Dupont any and all judgments, settlements, proceeds that it may obtain against the Fund, as well as against any other person or entity responsible for the refusal of the Fund to provide coverage; and agreed that Dupont shall choose counsel to bring the bad faith action against the Fund. Dupont agreed to seek satisfaction of the judgments only from the proceeds that the Estate may collect in such lawsuit against the Fund.
Dupont's counsel served a demand letter on the Department of Insurance on 19 September 2002, advising that recently it had been awarded a final judgment against an insured under the Fund's civil rights liability coverage and enclosed a copy of the final judgment. He requested that the Department make contact to discuss payment of the judgment and further advised that the Estate had assigned its rights under the liability coverage to Dupont. He did not attach a copy of the settlement agreement to the letter. Dupont's counsel cautioned the Department that its failure to timely respond would result in proceedings against the Fund under the assignment for satisfaction of the judgment. *346 The Department objected to the settlement agreement and assignment in the probate court and did not pay the demand.

State Court Proceedings
The state court litigation commenced with an ex parte hearing, resulting in a writ of garnishment and alternative writ of mandamus based upon the representation that "the Tangusso Estate had protected its interest by entering into a Coblentz agreement for consent judgment and assignment."
In Count I, Dupont sought a writ of mandamus against Gallagher, as head of the Department of Insurance that administers the Fund, alleging that Gallagher had a "legal duty to direct the fund to follow the requirements of Florida Statutes ... by paying the judgment entered in favor of Dupont against the Tangusso Estate." In Count II, Dupont sought garnishment pursuant to section 77.01, Florida Statutes (2002).
Gallagher and the Fund filed a motion for summary judgment with a request for attorney's fees, arguing that neither count had any merit under the law or facts. Dupont's counsel filed an affidavit in opposition to the motion for summary judgment and attached the federal judgment.
The court ordered Dupont to file an amended complaint, and the defendants subsequently filed amended motions for summary judgment. Dupont's amended complaint did not attach the ordered Coblentz agreement; it was still premised upon the demand letter.
The court granted final summary judgment to Gallagher and the Fund, concluding that the agreement required as a condition precedent that the Estate file suit against the Fund and recover a judgment, that the Estate had never filed any such lawsuit, and that the demand letter failed to inform the recipient that Dupont would receive an assignment only when the Estate received a judgment in a successfully litigated suit against the Fund. The court deemed its ruling dispositive and denied without explanation their motions for section 57.105 attorney's fees. This appeal ensued.

Final Summary Judgment
Dupont argues that the trial court erred in concluding that the settlement agreement was incorporated into the federal district court judgment and in allowing the Fund as a nonparty to the agreement and lawsuit to collaterally attack the terms of the consent agreement between Dupont and the Tangusso Estate. We agree.
The standard of review for construction of a contract and for summary judgment is de novo. FCCI Ins. Co. v. Horne, 890 So.2d 1141 (Fla. 5th DCA 2004). In order to determine the propriety of a summary judgment, this court must resolve whether there is any genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. Krol v. City of Orlando, 778 So.2d 490, 491-492 (Fla. 5th DCA 2001). We must consider the evidence contained in the record, including any supporting affidavits, in the light most favorable to the nonmoving party. Id. at 492.
The federal court judgment did not approve or incorporate the settlement agreement into the final order. The judgment recites that the parties had resolved their differences and entered into a stipulation for settlement and consented to the entry of judgment. Although a judgment may be entered pursuant to a settlement, once the judgment is entered, its enforceability is not tied to the terms of the settlement. Sands v. Granoff, 508 So.2d 543 (Fla. 3d DCA 1987). In Sands, the trial court was not precluded from enforcing a final judgment based on a stipulated *347 settlement, despite the contention that, prior to entry of judgment, the parties changed their agreement and reached an accord and satisfaction that was not reflected by the stipulation. The settlement agreement between Dupont and the Estate is simply a private contract. "While a settlement agreement may be the basis upon which a judgment may be entered, it is also a contract between the parties, the enforceability of which is governed by the laws of contract." Patel v. Ashco Enters., Inc., 711 So.2d 239 (Fla. 5th DCA 1998).
Dupont and the Tangusso Estate were free to modify their agreement to elect another remedy. "It is well established that the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement." St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla.2004). The contract may be modified by "subsequent oral agreement or course of dealing." Id. at 382.
Moreover, the Fund, as a non-party to the settlement agreement, has no standing to enforce it. A person not a party to nor in privity with a contract has no right to enforce it. White v. Exchange Corp., 167 So.2d 324, 326 (Fla. 3d DCA 1964). When a contract is designed solely for the benefit of the contracting parties, a third party cannot enforce its provisions even though the third party may derive some incidental or consequential benefit from the enforcement. K-Mart Corp. v. State, Dept. of Transp., 636 So.2d 131, 133 (Fla. 2d DCA 1994) (Lazzara, J., concurring). In this case, the Fund has no right to enforce the modifiable settlement agreement between Dupont and the Estate.
A consent judgment is a judicially approved contract, rather than a judgment entered after litigation, but it is a judgment nonetheless and entitled to the same preclusive, res judicata effect as any other judgment issued by a Florida court. Arrieta-Gimenez v. Arrieta-Negron, 551 So.2d 1184, 1186 (Fla.1989).
The Fund argues that the processing and payment of an insured's claim is subject to the conditions stated in the certificate of coverage and that its affidavits demonstrate that the Fund was unable to accomplish claim evaluation procedures. The circuit court agreed and deemed that events or procedures set forth in the settlement agreement operated as conditions precedent to recovery under the final judgment.
The Fund, as the insurer, however, is not entitled to raise any defense to the plaintiff's claim that it could have raised in the civil action. See Wright v. Hartford Underwriters Ins. Co., 823 So.2d 241 (Fla. 4th DCA 2002). In Wright, because the insurer refused to defend its insured, it was bound by the settlement's waiver of the defense of workers' compensation immunity and could not assert that defense against a claim for policy benefits to satisfy the judgment. Similarly in this case, once the Fund refused to defend the Estate, it lost its right to claim a defense that it otherwise could have raised in federal court.
While an insurance company is within its rights in a thorough investigation to determine whether the accident in question comes within coverage of its policy, the company acts at its peril in refusing to defend its insured and will be held responsible for the consequences. Florida Farm Bureau Mut. Ins. Co. v. Rice, 393 So.2d 552, 556 (Fla. 1st DCA 1980). When an insurer has denied coverage that actually exists, the insurer has breached the contract and therefore cannot be allowed to rely upon a contractual provision prohibiting the insured from settlement of the *348 claim with a responsible party in order to relieve itself from liability. Infante v. Preferred Risk Mut. Ins. Co., 364 So.2d 874, 875 (Fla. 3d DCA 1978) (stating that "[a]n automobile liability insurer, which has refused to honor a claim under uninsured motorist benefits prior to an insured's settlement with a tortfeasor, may not rely upon a settlement thereafter as a basis to deny coverage"). If the insurance company improperly refuses to defend its insured, the carrier cannot rely upon the "no action" clause to defeat a claim predicated upon the insured's settlement. Steil v. Fla. Physicians' Ins. Reciprocal, 448 So.2d 589, 591 (Fla. 2d DCA 1984).
The Fund had notice of the suit and an opportunity to defend. Ordinarily, one who is not a party to a settlement agreement cannot be bound by its terms, but an exception applies where an insurer wrongfully refuses to defend its insured. Ahern v. Odyssey Re (London) Ltd., 788 So.2d 369, 371-372 (Fla. 4th DCA 2001). Where the indemnitor or liability insurer has notice of a proceeding against its indemnitee or insured and is afforded an opportunity to appear and defend, a judgment rendered against the indemnitee or insured, in the absence of fraud or collusion, is conclusive against the indemnitor or insurer as to all material matters determined therein. Coblentz v. Amer. Surety Co. of New York, 416 F.2d 1059, 1062-1063 (5th Cir.1969). In that circumstance, the insured's liability has been established by the settlement, and the insurer may not later relitigate the issue. Ahern, 788 So.2d at 372. To enforce a consent judgment such as the present one, Dupont must demonstrate: (1) coverage, (2) a wrongful refusal to defend, and (3) that the settlement was reasonable and made in good faith. Id. See also Steil, 448 So.2d at 591-592.
The Fund lost the chance to litigate the factual issues surrounding the § 1983 lawsuit by its refusal to represent the Estate, and the settlement served to establish its liability subject to a hearing on the reasonableness and amount of the consent judgment. Ahern, 788 So.2d 369, supports this result. There, the plaintiffs sued Medi-Trans, Inc. for negligent hiring and retention of its employee, a driver for nonemergency transport vehicles. The driver, who was involved in a vehicle collision resulting in one plaintiff's death and serious injuries to the other, was under the influence of alcohol and did not have a valid driver's license. When Medi-Trans' insurer refused to provide a defense and denied coverage, Medi-Trans entered into consent judgments with the plaintiffs. Pursuant to an assignment of rights, the plaintiffs then brought a declaratory judgment action seeking to enforce those judgments against the insurer. After a hearing, the trial court entered a final order that enforced the judgment as to one plaintiff, but refused to enforce the judgment as to the other plaintiff, on the ground that the claim was too attenuated and the estate would not have prevailed at trial. The appellate court held that the insurer lost its chance to litigate the factual issues surrounding duty, breach, and proximate causation, and the settlement served to establish its liability after a remand for a hearing on the reasonableness and amount of the consent judgments.
Turning to Dupont's remedies, our courts have held that "mandamus is an appropriate remedy to force a recalcitrant public official to obey the law. Specifically, mandamus is available to require such an official to satisfy a judgment against him." Hattaway v. McMillian, 859 F.Supp. 560, 565 (N.D.Fla.1994). In Hattaway, a judgment creditor moved for writ of garnishment and mandamus against a sheriff to garnish the sheriff's self-insurance *349 pool, or directly collect judgment not paid by excess carriers. See also City of Ocoee v. Harris, 155 Fla. 514, 20 So.2d 674 (1945) (holding mandamus proper vehicle to require payment of judgment against municipality); Conner v. Mid-Florida Growers, Inc., 541 So.2d 1252, 1255 (Fla. 2d DCA 1989) (holding writ of mandamus against Department of Agriculture and Consumer Services to pay judgment from inverse condemnation actions was properly brought in circuit court, and that state official may be compelled to pay obligations incurred by the official or his agency); Navarro v. Bouffard, 522 So.2d 515, 517 (Fla. 4th DCA 1988) (holding mandamus is the proper, and indeed the only, vehicle for enforcing judgment against a governmental entity).
The Fund, citing Lee County v. State Farm Mutual Automobile Insurance Co., 634 So.2d 250 (Fla. 2d DCA 1994), argues that, before a court may issue writ of mandamus, it must be shown that the petitioner has a clear legal right on the part of the petitioner and the respondent has an indisputable legal duty. However, in this case, once the court makes the requisite findings as regards a Coblentz agreement, Dupont's federal judgment will represent a clear legal right demonstrating an indisputable legal duty. State ex rel. Foster v. Board of Public Instruction of Duval County, 189 So.2d 161 (Fla.1966), does not support the Fund's position that mandamus will not issue where its enforcement depends on a determination of controverted questions of fact. Foster held that the appellate court could not entertain mandamus because questions of fact had been raised that required the taking of testimony. But Foster also declared that the mandamus action could be brought in circuit court or in administrative proceedings in order to reach the merits. Id. at 162. Because we are remanding the present case for the circuit court to determine coverage, wrongful refusal to defend, and reasonableness of the settlement agreement and final judgment, Foster is not relevant here.
The certainty and non-contingency of Dupont's final judgment from federal district court permits him to seek mandamus or garnishment to collect against the Fund. See Hattaway, 859 F.Supp. at 564-566; see also Pippin v. Nat'l Union Fire Ins. Co., 845 F.Supp. 849, 851 (M.D.Fla.1994); Grange Mut. Cas. Co. v. Stroud, 173 So.2d 171, 172 (Fla. 2d DCA 1965). However, either remedy is subject, in the context of a Coblentz agreement, to the requirements set forth in Ahern, 788 So.2d at 371-372, and Steil, 448 So.2d at 591-592. The trial court did not reach these issues, and this court cannot determine the outcome of the inquiry.
Section 284.30 provides employees coverage for § 1983 civil rights judgments against them; whether that coverage extends to the employee's estate is another issue. That answer may determine whether the Fund wrongfully refused coverage. Finally, if the trial court affirmatively answers these inquiries, then it must evaluate the reasonableness and lack of collusion or fraud.

Section 57.105 attorney's fees
This court reviews an order denying a motion for attorney's fees and costs for an abuse of discretion. Dep't of Revenue v. Yambert, 883 So.2d 881, 883 (Fla. 5th DCA 2004); Gahn v. Holiday Property Bond, Ltd., 826 So.2d 423, 425-426 (Fla. 2d DCA 2002).
The Fund argues that the Coblentz agreement is irretrievably intertwined with and contrary to Dupont's mandamus and garnishment claims, and, because the demand letter contradicted the terms of the agreement, the claim had no basis in law or fact. Therefore, it argues entitlement *350 to section 57.105 fees. However, because the Fund as a nonparty cannot make a collateral attack on the terms of the agreement, it logically cannot contend there was no basis in law or fact to support Dupont's claims. We conclude the Fund is therefore not entitled to section 57.105 attorney's fees. Similarly, the Fund's argument opposing a garnishment claim is irretrievably intertwined with its arguments that the settlement agreement did not give rise to a proper judgment. It has not demonstrated that the trial court abused its discretion in denying section 57.105 fees.
The Fund also argues that it is not sui juris because it is not identified in section 20.13, Florida Statutes (2003), or included within the definitions at section 120.52, Florida Statutes (2003). The Fund cites two cases, Florida Department of Insurance, Division of Risk Management v. Tuveson, 543 So.2d 245 (Fla. 1st DCA 1989), and Ball v. Florida Podiatrist Trust, 620 So.2d 1018 (Fla. 1st DCA 1993), that do not support its argument that the Fund is not sui juris. The Florida Legislature created the Fund as a self-insurance fund to provide liability insurance to governmental agencies and employees in civil rights cases. § 284.30. If the trial court concludes that the Fund had not been properly named, it should allow Dupont, as he requested, to amend to add the proper party. See Barone v. Scandinavian World Cruises, 531 So.2d 1036, 1039-1040 (Fla. 3d DCA 1988).
As a judgment holder against the Estate, Dupont has an independent action for garnishment against the Fund. Dupont has the right to choose his remedy and may pursue any theory provided that a cause of action has been stated. See Pan Am. Bank of Miami v. Osgood, 383 So.2d 1095, 1097-1098 (Fla. 3d DCA 1980). Once the trial court evaluates the Coblentz factors, it shall in turn evaluate Dupont's alternative petitions for mandamus or garnishment.
Accordingly, we reverse the order granting final summary judgment to Gallagher and the Fund, affirm the denial of section 57.105 attorney's fees, and remand for further proceedings.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
GRIFFIN and PALMER, JJ., Concur.
NOTES
[1] Coblentz v. Amer. Sur. Co. of New York, 416 F.2d 1059 (5th Cir.1969).