SALTER, J.
(dissenting).
I respectfully dissent. The circuit court orders regarding the probate proceeding and the final judgment in the bad faith insurance lawsuit were correct and must *251 be affirmed. Well-settled statutory and de-cisional rules governing claims bar dates, and those governing the rights and duties of personal representatives in the administration of estates, are controlling.
This is not the first time that a claimant has been exposed to a harsh outcome in a tragic case because of the failure to comply with the procedural requirements of the Florida Probate Code and Florida Probate Rules. Those time and procedural requirements must be upheld, however, because they were enacted by the Florida Legislature for the protection of decedents’ estates, personal representatives, creditors, obligors, and beneficiaries.
I. The Statutes
The bad-faith insurance claim against Infinity Indemnity is founded on the claim of Ms. Reyes[7] against Infinity Indemnity’s insured, the decedent, Jorge Arroyo. The insurer has properly conceded, and the applicable statutes provide, that the claim against Mr. Arroyo’s estate could be settled without filing a timely written claim in the probate court under a narrow exception: “[t]o the limits of casualty insurance protection only, any proceeding to establish liability that is protected by the casualty insurance.” § 733.702(4)(b), Fla. Stat. (2013).
That provision is eminently logical; a timely claim which seeks nothing from the estate in excess of the coverage limits of an insurance policy covering the decedent and the claim is in substance a claim against the policy, not a claim against the decedent, the estate, or the personal representative. Because other creditors of the estate having no recourse to the policy, and beneficiaries of the estate, should not be adversely impacted by the net result, there is no necessity to prohibit the claimant from prosecuting a proceeding to establish the liability of the insurer “to the limits of casualty insurance protection.” Id.
The exception does not apply, however, to a claim against the deceased insured in excess of the policy limits, because such a claim, if timely and allowed, might diminish estate assets. Accordingly, a claim for more than policy proceeds must be timely filed in the estate. Section II of this dissent addresses the Florida and federal cases enforcing these statutory requirements.
And the narrow exception provided by section 733.702(4)(b) is followed by section 733.702(5), reiterating that nothing in section 733.702 “shall extend the limitations period set forth in s. 733.710.” Section 733.710, in turn, establishes an absolute two-year time limitation, measured from the death of the decedent, for the filing or establishment of a claim against the decedent’s estate or the personal representative. The statutory deadline is jurisdictional and self-executing.
In the present case, there is no dispute that the date of Mr. Arroyo’s death (and Ms. Reyes’ catastrophic injuries) was October 9, 2009. The lawsuit by Ms. Reyes against the deceased insured’s estate was filed in 2011, but no written claim against his estate was ever filed. The consent settlement agreement and assignment entered into by Ms. Reyes and the Arroyo estate pursuant to Coblentz v. American Surety Co. of New York, 416 F.2d 1059 (5th Cir. 1969), were signed in January 2013, and the consent final judgment in *252 favor of Ms. Reyes and against the estate was docketed in April 2013. These occurrences took place over three years after Mr. Arroyo died and without preliminary notice to interested persons or consider^ ation by the probate court in the estate proceedings. His estate attempted to accept liability for a claim which was, as a matter of law, unenforceable against the estate.
The narrow exception of section 733.702(4)(b) is inapplicable in this case because the estate’s liability for $30,000,000.00 vastly exceeded “the limits of casualty insurance protection” under the policy (a face amount of $10,000.00, if the estate or Ms. Reyes prevailed regarding coverage). Under the unambiguous statutory provisions governing the filing of claims against a decedent and the decedent’s estate for an amount exceeding “the limits of casualty insurance protection,” the Coblentz agreement was untimely and barred.
The probate statutes governing timeliness are not the only restrictions applicable to the present case. Section 733.706 specifies that “[c]laims on all judgments against a decedent shall be filed in the same manner as other claims against estates of decedents.” The consent final judgment in the present case was not filed as a claim in the estate and was not brought to the attention of the probate court until Infinity Indemnity did so in its motion to invalidate Ms. Reyes’ claim against the estate.
Finally, an “interested person” under the Florida Probate Code is
any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved. ... The meaning, as it relates to particular persons, may vary from time to time and must be determined according to the particular purpose of, and matter involved in, any proceedings.
§ 731.201(23), Fla. Stat. (2013). In the present case, the probate court correctly determined that Infinity Indemnity was an interested person.
II. Applicable Case Law
Regarding the exception for claims against an insured decedent, section 733.702(4)(b), the Supreme Court of Florida has left no doubt that the exception does not extend to extra-contractual bad faith claims above policy limits; an unfiled claim by a plaintiff may be pursued “to establish liability of the decedent or personal representative and recovering up to the limits of the applicable insurance coverage.” Pezzi v. Brown, 697 So.2d 883, 885 (Fla. 1997) (emphasis added); see also Kent Insurance Co. v. Estate of Atwood, 481 So.2d 1294, 1295 (Fla. 1st DCA 1986).
In May v. Illinois National Insurance Co., 771 So.2d 1143 (Fla. 2000), the Supreme Court of Florida addressed the application of two of the probate statutes, sections 733.702 and 733.710, in the context of a bad faith insurance case.[8] Mr. May was the administrator ad litem—functionally equivalent to the personal representative for Mr. Arroyo’s estate in the present case—for the estate of Mr. Bradley. Mr. Bradley was the driver in a motor vehicle collision in which he died. His insurer was Illinois National Insurance Company (INIC).
Mr. and Mrs. Prockup were in a vehicle involved in the collision with the vehicle driven by Mr. Bradley. Mr. Prockup sustained non-fatal injuries in the accident, *253 but his wife died at the scene of the collision. Mr. Prockup, individually and as personal representative for the estate of his wife, sued the owner of the vehicle (Mr. Bradley’s niece) and Mr. May, as personal representative of Mr. Bradley’s estate. Mr. Prockup requested that the Florida probate court appoint Mr. May administrator ad litem of the Bradley estate, as it became clear that no personal representative had been appointed and that there was uncertainty regarding the existence of a will.
INIC did not provide a defense and disputed coverage as to the Prockups’ lawsuit against Mr. Bradley’s estate and Mr. May. Following a stipulation by the estate and Mr. May to liability in that lawsuit, a trial on damages culminated in a judgment against the vehicle owner and Mr. May (for the estate of Mr. Bradley) for $1,106,522.70. Id. at 1145-46. Mr. Prockup later commenced a bad faith action against INIC, which INIC removed to the U.S. District Court for the Northern District of Florida.[9] INIC asserted that the Bradley estate had no liability to the Prockups because the Prockups had not filed timely claims in the estate within the times specified in sections 733.702 and 733.710. “After considering the parties’ arguments, the federal district court granted summary judgment in favor of INIC. In granting INIC’s motion, the trial court determined that Mr. Prockup had failed to timely file a sufficient statement of claim in the Bradley Estate proceedings in accordance with the Florida Probate Code.” Id. at 1149.
The judgment was appealed to the U.S. Court of Appeals, which then certified to the Supreme Court of Florida this question:
WHETHER SECTION 733.702 AND SECTION 733.710 OF THE FLORIDA STATUTES CONSIDERED SEPARATELY AND/OR TOGETHER OPERATE AS STATUTES OF NON-CLAIM SO THAT IF NO STATUTORY EXCEPTION EXISTS, CLAIMS NOT FORMALLY PRESENTED WITHIN THE DESIGNATED TIME PERIOD ARE NOT BINDING ON THE ESTATE, OR DO THEY ACT AS STATUTES OF LIMITATIONS WHICH MUST BE PLEADED AND PROVED AS AFFIRMATIVE DEFENSES IN ORDER TO AVOID WAIVER.
Id, at 1145.
The Supreme Court of Florida held that section 733.702 “is a statute of limitations that cannot be waived in a probate proceeding by failure to object to a claim on timeliness grounds,” while section 733.710 “is a jurisdictional statute of nonclaim that is not subject to waiver or extension in a probate proceeding.” Id.[10]
May was carefully considered and applied in a more recent federal case in Florida, Wald v. State Farm Mut. Auto. Ins. Co., 3:11-cv-1112-J-32TEM, 2013 WL 9636854 (M.D. Fla. July 25, 2013), aff'd, 556 Fed.Appx. 933 (11th Cir. 2014). The U.S. District Court granted the insurer’s motion for summary judgment, concluding that “May’s reasoning applies to plaintiffs in third-party bad faith actions like Wald.” Id. at *7. In Wald, as in the present case, the time-barred, extinguished claim of the plaintiff against the *254 deceased insured’s estate could not be resuscitated by a Coblentz agreement and an assignment to a third-party, because the claim exceeded the policy limits.
In the case at hand, the trial court correctly applied the statutes, the May and Wald decisions, and numerous other authorities in a seventeen-page, carefully-reasoned opinion granting Infinity Indemnity’s motion for summary judgment as to Ms. Reyes’ bad faith claim.
III. The Majority’s Waiver Argument A. Standard of Review
While the majority is correct that the trial court’s order granting Infinity Indemnity’s motion for summary judgment is reviewed de novo, it has ignored the jurisdictional effect of the nonclaim statute, section 733.710, as determined in May. That jurisdictional infirmity, as to which there is no issue of material fact in this case, entitled Infinity Indemnity to summary judgment as a matter of law under the case cited by the majority. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000).
B. The Extent of the Insurer’s Alleged Waiver
The majority maintains that Infinity Indemnity lost the right to raise not only coverage issues under the policy, but also any defense under the nonclaim statute and the Probate Code: “[Wjhen an insurer refuses to defend its insured from a lawsuit, and the insured later settles the suit by entering into a Coblentz agreement, the insurer is precluded from relitigating the issue of its insured’s liability in subsequent proceedings.”[11] The cases cited for this proposition, however, do not address a deceased insured’s estate’s purported settlement of an untimely, preclusively barred claim against the estate.
In Gallagher v. Dupont, 918 So.2d 342 (Fla. 5th DCA 2005), a third-party claimant filed a lawsuit against a state employee. When the employee died, the State refused to continue the defense of the lawsuit on behalf of the employee’s estate. The third-party claimant then entered into a Coblentz agreement with the estate and obtained a consent judgment against the State. But although the State (through its risk management fund) “lost the chance to litigate the factual issues” relating to the underlying lawsuit, these issues involved “duty, breach, and proximate causation,” not the question of whether the State was under an obligation to provide a defense to a deceased state employee’s estate. Id. at 348-49. For that reason and others, the appellate court remanded the case to the trial court for further proceedings. Gallagher does not preclude an insurer from defending itself on the grounds that the estate of its insured is immune from suit.
In Ahern v. Odyssey Re (London) Ltd., 788 So.2d 369 (Fla. 4th DCA 2001), the insured was Medi-Trans, Inc., the insurer was Odyssey Re, and the third-party claimant was the estate of a passenger who died in a collision while in a van operated by Medi-Trans. Odyssey Re declined to defend Medi-Trans against claims brought by the personal representative of the estate of the passenger. Medi-Trans then entered into a Coblentz agreement with the personal representative, a consent judgment, and an assignment of Medi-Trans’ rights against Odyssey Re to the personal representative.
The Fourth District held that in refusing to provide a defense to Medi-Trans, “Odyssey lost its chance to litigate the factual issues surrounding duty, breach and proximate causation which were pivotal to the ultimate resolution of the legal principles *255 involved in [the deceased passenger’s] claims.” Id at 373. The probate two-year nonclaim statute, section 733.710, is not an issue relating to an insured’s duty, breach, or proximate causation vis-á-vis a third-party claimant. Instead, it is a statutory bar precluding a third-party claimant from pursuing such a claim at all, if untimely, against an estate. In Ahem, the insured was a corporation, not an estate, and the effect of the nonclaim statute was not at issue.
In another case cited by the majority, Independent Fire Insurance Co. v. Paulekas, 633 So.2d 1111 (Fla. 3d DCA 1994), the insured survived the accident for which he was alleged to have been responsible. The opinion did not involve an insured’s estate or the Florida Probate Code, much less a jurisdictionally time-barred claim.
Finally, the majority’s reliance on Mid-Continent Casualty Co. v. Royal Crane, LLC, 169 So.3d 174 (Fla. 4th DCA 2015), is equally misplaced. The case reversed a final judgment against an insurer following a Coblentz agreement and a third-party assignee’s claim against the insurer for its refusal to defend. More significantly, the case does not involve a claim against the estate of a deceased insured or the effect of the nonclaim statute, section 733.710.
Simply stated, there is no Florida case, or decision by a federal court in Florida applying Florida law, allowing an estate to consent to a judgment for an alleged claim that was not filed in the estate within (a) the limitations period of section 733.702, and (b) two years of the insured decedent’s death, the claims bar period specified by section 733.710. As already noted, perhaps repeatedly for emphasis, section 733.710 is a jurisdictional statute of nonclaim. The majority’s attempt to supply jurisdiction contrary to a controlling statute and controlling Florida case law cannot withstand careful scrutiny.
IV. The Insurer’s Motion in the Probate Case
Infinity Indemnity separately and successfully moved the probate court to determine that the personal representative of the estate had no authority to enter into the Coblentz agreement with Ms. Reyes. The probate judge correctly agreed to hear the insurer’s objection to the time-barred consent judgment, finding that “the Estate had absolute immunity from Reyes’s claim because Reyes failed to file a claim against the Estate in this matter and, therefore, said claim was extinguished.” The probate court also correctly held that the consent judgment against the estate was not valid or enforceable against the estate because it “was not filed in the Estate, violating section 733.706, Florida Statutes.”
Ms. Reyes argues, and the majority apparently agrees, that the probate framework has no application here because Infinity Indemnity denied coverage and thereby waived its rights to object to Ms. Reyes’ claim against the estate of Mr. Arroyo. Ms. Reyes has also persuaded the majority that the probate court abused its discretion when it allowed the insurer to file a motion in the probate proceedings so late in the process, and by “injecting a new issue into the proceedings,” based on a “contingent interest in the proceedings, as opposed to a direct and immediate interest.”[12] This latter assessment erroneously applies case law applicable to intervention in non-probate civil cases under Florida Rule of Civil Procedure 1.230.
Rule 1.230, “Interventions,” does not apply to a probate proceeding in the same way it applies in a civil case outside the *256 probate division. First, Florida Probate Rule 5.010 specifies that “[t]he Florida Rules of Civil Procedure apply only as provided herein.” One such incorporation of the Florida Rules of Civil Procedure relates to adversary proceedings, as detailed in Florida Probate Rule 5.025. See Fla. Prob. R. 5.025(d)(2). Another group of civil rules (not including Rule 1.230), regarding discovery and subpoenas, is specifically incorporated by Florida Probate Rule 5.080(a).
Second, joinder and notice in an estate proceeding are quite different than in a non-probate adversarial civil case. The overarching objective of the Florida Probate Code, chapters 731-735, Florida Statutes (2013), is the orderly administration of the assets and liabilities of an estate, such that creditors of the decedent, claims and other property of thé decedent, and beneficiaries of the decedent are accorded their rights under Florida law, whether in intestacy or pursuant to a valid last will and testament.
In furtherance of that objective, the Florida Probate Code obligates the personal representative to provide notices to several categories of. interested parties, such as creditors, obligors of the decedent, and prospective beneficiaries. This is accomplished through actual notice and via publication. See, e.g., §§ 733.212, 733.2121, Fla. Stat. (2013). Interested persons who have not received notice via these provisions, but become aware of the estate proceedings, may request and obtain notice of further proceedings, and copies of pleadings, by filing a written request and serving a copy on the attorney for the personal representative. Fla. Prob. R. 5.060.
The Infinity Indemnity policy at issue in the present case was an asset of Mr. Arroyo’s estate. The estate was still open and subject to further administration at the time Infinity Indemnity filed its motion for determination of the personal representatives’ right to enter into the 2013 settlement agreement. Under section 731.201(23), quoted in pertinent part in section I of this dissent, Infinity Indemnity was an “interested person” entitled to be heard by the probate court with respect to an alleged claim above policy limits. The majority incorrectly implies that the parties’ references to Rule 1.230 and the term “intervention” somehow deprived Infinity Indemnity of standing to be heard.
But in the present case, whether through inadvertence or design, Infinity Indemnity was not designated as an interested party by the personal representatives (Mr. Arroyo’s parents) following the filing of their petition for administration in January 2011. The estate was the owner of the Infinity Indemnity policy and successor to the insured, but any rights or obligations under that policy were not listed in the petition or related filings.[13] The petition alleged that the nature and approximate value of the assets in the estate are “unknown at this time and consist of a wrongful death action arising from the automobile accident in which decedent died.”[14]
Nor did counsel for Ms. Reyes file a claim in the estate or, so far as the record reflects, notify Indemnity Insurance that *257 Ms. Reyes was filing a civil case against the estate outside the probate proceeding without authorization from the probate court.[15] Further, the personal representatives did not comply with Florida Probate Rule 5.065(a) by filing “a notice when a civil action has been instituted by or against the personal representative.”
Ms. Reyes’ original lawsuit against the personal representatives was filed in the civil division five days after the petition for administration of the Arroyo estate was filed in the probate division, in 2011. Infinity Indemnity was not sued by Ms. Reyes based on the Arroyo estate’s purportedly-assigned claim until June 2013, over two years later. Ms. Reyes’ argument that Infinity Indemnity filed its motion too late in the probate proceedings ignores the fact that nothing was done in the probate proceeding from April 2011 through June 2013 to advise Infinity Indemnity of a claim by the estate or its assignee against Infinity Indemnity.
Ms. Reyes argues, nonetheless, that Ms. Reyes had no obligation to notify the probate court or interested parties in the estate proceeding, because others had no interest in the Infinity Indemnity insurance policy, and because Ms. Reyes was waiving any right to execute against the estate—in the Coblentz agreement—in return for the estate’s assignment to Ms. Reyes of its rights against Infinity Indemnity. This argument fails, because it completely ignores the transparency and timing required by the Florida Probate Code. Other creditors, beneficiaries, and interested persons, not to mention the probate court itself, should be given an opportunity to understand the terms of an arrangement whereby the personal representá-tives propose to allow the entry of an untimely $30,000,000.00 claim against the estate and the assignment of the estate’s claim against an insurer to that single claimant.
The majority argues that these requirements can be dispensed with because there were no other creditors of the estate who might have made claims against the estate and its insurance policy. Even if that is true in the present case, that rationale is not a sound basis for ignoring the statutes and rules that control probate administration.
The point of this recitation of facts and overview of probate proceedings is that “intervention” requiring affirmative acts by Infinity Indemnity is a departure from the norm contemplated by the Florida Probate Code and Florida Probate Rules. In probate proceedings, the estate and personal representative ordinarily are the initiators notifying known “interested persons” of everything from the opening of the estate to the appointment of the personal representative, to lawsuits against the estate, and to proposed settlements (among other developments affecting administration). In an ordinary estate case, it is not even necessary for an obviously-interested party like Infinity Indemnity to file a motion to intervene if the personal representative and claimants have complied with their obligations.
And even if we were to assess the probate court’s order recognizing Infinity Indemnity’s right to object to the 2013 settlement under the standards applicable to Rule 1.230 in a general civil case, our standard of review would be for an abuse of discretion, Barnhill v. Fla. Microsoft Anti-Trust Litig., 905 So.2d 195 (Fla. 3d *258 DCA 2005), liberally construed in favor of permitting a person claiming an interest in the proceeding to protect that person’s rights, Grimes v. Walton County, 591 So.2d 1091, 1094 (Fla. 1st DCA 1992). As detailed above, any delay in filing the motion and objections in the present case was not attributable to Infinity Indemnity, but rather (a) to the failure of the personal representatives to list the Infinity Indemnity policy as an asset of the estate and Ms. Reyes’ lawsuit as a potential liability of the estate, and (b) Ms. Reyes’ failure to file a notice of her claim in the estate.
The probate court did not abuse its discretion in permitting Infinity Indemnity to claim “interested party” status in the still-open probate administration of Mr. Arroyo’s estate. That court properly exercised its jurisdiction in determining that the estate had no authority to enter into the settlement agreement with Ms. Reyes, and that at the time the estate did so, the estate had “absolute immunity” from Ms. Reyes’ claim.
V. Conclusion
The trial judge in the civil division did not err in entering judgment against Ms. Reyes in the bad faith case. Ms. Reyes’ original personal injury lawsuit against the Arroyo estate, her Coblentz agreement with the personal representative of that estate, the entry of the consent judgment in the lawsuit, and the estate’s purported assignment to Ms. Reyes of the estate’s rights of action against Infinity Indemnity were effected without compliance with the Florida Probate Code and Florida Probate Rules. As a result, those steps collectively created an invalid foundation upon which to base a bad faith action against Infinity Indemnity.
Similarly, the probate court did not abuse its discretion in granting Infinity Indemnity’s motion for a determination regarding the estate’s purported settlement. The court recognized that Infinity Indemnity was significantly affected by the personal representatives’ missteps and Ms. Reyes’ circumvention of the probate court in orchestrating the bad faith lawsuit. The probate court correctly held that Ms. Reyes failed to file a timely claim against the Arroyo estate and that the personal representative had no authority to enter into the Coblentz agreement and to allow the entry of the consent judgment.
For these reasons, I respectfully dissent.

. Delia Reyes sustained traumatic and incapacitating injuries in the vehicle collision that is at the center of the case. In the litigation involved in this appeal, she is represented as the plaintiff by her mother (Marta Reyes) as guardian, and by a court-appointed guardian for her two children. We refer to the plaintiffs in the cases below and the appellants in this appeal collectively as “Ms. Reyes."

. The opinion in May arose from a federal case. The United States Court of Appeals for the Eleventh Circuit certified the controlling issues of Florida law (the proper application of sections 733.702 and 733.710) to the Supreme Court of Florida.

. Before removing the case to federal court, INIC paid the policy limits plus interest into the registry of the state circuit court.

. In May, the Court held that the third-party bad faith claimant had filed a sufficient claim for purposes of section 733.703 by filing pleadings regarding the wrongful death action against the estate in the probate case within two years of the insured’s death. No such timely pleadings were filed by Ms. Reyes in the estate of Mr. Arroyo in the present case.

. Majority op. at 246; accord Majority op. at 247.

. Majority op. at 245-46.

. An insurance policy that is an asset of the estate, as here, should be included in the inventory or list of. reported assets. In re Bernard's Estate, 183 So.2d 715 (Fla. 1st DCA 1966).

. The estate initially asserted claims against Ms. Reyes as a passenger based on her alleged interference with Mr. Arroyo's driving. The petition and pleadings filed before Infinity Indemnity’s motion never made reference to a claim by Ms. Reyes against the decedent, the decedent’s insurance policy, or Infinity Indemnity.

. Counsel for Ms. Reyes knew, based on correspondence in October and December 2009, that Infinity Indemnity had disclosed prior coverage under a policy allegedly can-celled before the date of the accident, and had denied coverage as of the date of the accident due to the alleged nonpayment of premiums.