# Third District Court of Appeal

## State of Florida

Opinion filed January 18, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D15-194 & 3D15-183
Lower Tribunal Nos. 13-19660 & 11-62

_____

**In re: The Estate of Jorge Luis Arroyo, Jr.;**

**Delia Reyes, an incapacitated person, by and through Marta Reyes, her natural mother and court-appointed guardian, and Marta Reyes, as court-appointed guardian of Ignacio Reyes, a minor, and Isabella de Armas, a minor,**
Appellants,

vs.

**Infinity Indemnity Insurance Company, a foreign corporation, et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Michael A. Genden and Bronwyn C. Miller, Judges.

Ross & Girten, and Lauri Waldman Ross and Theresa L. Girten; DeMahy, Labrador, Drake, and Pete L. DeMahy and Frank L. Labrador, for appellants.

White & Case LLP, and Raoul G. Cantero and Christopher W. Swift-Perez; GrayRobinson, P.A., and Charles T. Wells (Orlando), for appellee Infinity Indemnity Insurance Company.

Before ROTHENBERG, LAGOA, and SALTER, JJ.

ROTHENBERG, J.

Delia Reyes ("Reyes") appeals: (1) the probate court's order granting Infinity Indemnity Insurance Company's ("Infinity") motion to intervene in the probate proceedings in the Estate of Jorge Luis Arroyo, Jr. ("the Estate"); (2) the probate court's subsequent order finding that the personal representatives of the Estate did not have the authority to settle Reyes's lawsuit against the Estate by entering into a <u>Coblentz</u> agreement[1]; and (3) the circuit court's final judgment incorporating its order granting summary judgment in favor of Infinity on Reyes's bad-faith claim against Infinity.

We reverse the probate court's orders granting Infinity's motion to intervene and its subsequent determination regarding the authority of the personal representatives to settle Reyes's lawsuit because Infinity's alleged interest was not at issue in the probate proceedings at the time Infinity moved to intervene. We also conclude that even if intervention was properly granted, the probate court erred by determining the authority of the personal representatives to settle Reyes's lawsuit because when Reyes filed the lawsuit against the Estate, and the Estate tendered its defense to Infinity, its insurer, Infinity declined to defend the claim. Thus, the defenses Infinity subsequently raised in the probate court were barred and Infinity

---

[1] <u>See</u> <u>Coblentz v. Am. Surety Co. of New York</u>, 416 F.2d 1059 (5th Cir. 1969).

was prohibited from raising these defenses as a matter of law. We similarly find that the circuit court erred by considering and then granting Infinity's motion for summary judgment based on these barred defenses in the bad-faith lawsuit against Infinity. Accordingly, we reverse all three orders on appeal.

## BACKGROUND

As the result of a car accident on October 9, 2009, Jorge Luis Arroyo, Jr. ("Arroyo") died and Reyes suffered severe incapacitating injuries. Arroyo's parents petitioned the probate court to open the Estate and to act as the Estate's personal representatives, which the probate court granted in January 2011.

On February 11, 2011, Reyes filed a personal injury negligence lawsuit ("the negligence lawsuit") in the circuit court against the Estate, but never filed a written claim in the probate court. Although the Estate tendered the defense of the negligence claim to Infinity, Infinity declined to defend the claim. In January 2013, the Estate settled the negligence lawsuit by entering into a Coblentz agreement with Reyes, in which Reyes and the Estate agreed to the entry of a consent judgment, Reyes agreed not to execute the judgment against the Estate, and the Estate assigned any rights it had against Infinity to Reyes. After Reyes and the Estate entered into the Coblentz agreement and obtained the consent judgment, Reyes sued Infinity in circuit court pursuant to the assignment of rights provision

3

in the Coblentz agreement, alleging in part that Infinity had demonstrated bad faith by failing to defend the Estate in the negligence lawsuit ("the bad-faith lawsuit").[2]

Infinity attacked the bad-faith claim on two fronts. First, Infinity moved for entry of summary judgment in the circuit court's bad-faith lawsuit, arguing that, because Reyes failed to file a statement of claim in the probate court regarding the negligence lawsuit, she could no longer do so because the negligence lawsuit was barred by the statute of limitations, § 733.702, Fla. Stat. (2011), and the statute of repose, § 733.710, Fla. Stat. (2011), set forth in the probate code. Accordingly, Infinity claimed that: (1) the Estate was immune from Reyes's negligence suit at the time the personal representatives of the Estate settled the lawsuit; (2) the Coblentz agreement and the subsequent consent judgment were therefore unenforceable against the Estate; (3) the Estate was not exposed to an excess judgment because neither the Coblentz agreement nor the consent judgment were enforceable against the Estate; and (4) in order for Reyes to succeed in its bad-faith claim against Infinity, the Estate would need to be exposed to an excess judgment. Thus, Infinity contended that Reyes's bad-faith claim against Infinity failed because Reyes, standing as the assignee of the Estate, could not prove that the Estate was exposed to an excess judgment.

---

[2] Reyes also sued Insurance USA & Associates, Inc. and Nicole Marie Antini, but those claims were later voluntarily dismissed without prejudice and are not at issue in this appeal.

Infinity's second front for attacking the bad-faith claim was waged in the probate court. Infinity filed a motion for leave to intervene in the Estate proceedings pursuant to Florida Rule of Civil Procedure 1.230 for the purpose of determining whether the Estate's personal representatives had the authority to settle the negligence lawsuit in the circuit court by entering into the <u>Coblentz</u> agreement. When Infinity moved to intervene, the Estate's proceedings in probate court were uncontested, with no adversarial motions pending before it and minimal record activity. The probate court granted Infinity's motion to intervene after concluding that Infinity was an interested party regarding the <u>Coblentz</u> agreement, but limited Infinity's intervention to the issue of "the applicability of Part VI of Florida Statute Chapter 733 to the Personal Representative's execution of the Settlement Agreement." Infinity then filed a motion to determine the personal representatives' right to enter into the <u>Coblentz</u> agreement ("motion to determine"), and Reyes was also permitted to intervene to oppose this motion.

After allowing Infinity to intervene, the probate court ruled on Infinity's motion to determine and entered an order finding that section 733.710 of the Florida Statutes protects an estate from any claim filed more than two years after the death of the decedent, and that Reyes failed to file a claim against the Estate within two years of Arroyo's death. Accordingly, the probate court concluded that the personal representatives did not have the authority to enter into the <u>Coblentz</u>

agreement in the negligence lawsuit because at the time the personal representatives entered into the Coblentz agreement, the Estate enjoyed absolute immunity from Reyes's claim, and thus, the consent judgment was unenforceable against the Estate.[3] Reyes has appealed this order and the order granting Infinity's motion to intervene.

Meanwhile, although the original circuit court judge denied Infinity's motion for summary judgment, a successor circuit court judge reconsidered Infinity's motion and entered a written order granting Infinity's motion for summary judgment. The successor circuit court judge concluded that "Reyes's bad[-]faith claim against Infinity was dependent upon the Estate being liable for the consent judgment in excess of any policy limits," and thus, "Reyes's failure to timely file a claim against Arroyo's Estate relieved the Estate of any liability for the consent judgment." The circuit court's order concluded that a bad-faith claim requires the insured to be exposed to an excess judgment,[4] and, because the consent judgment could not be the source of an excess judgment against the Estate, Reyes's bad-faith claim against Infinity failed as a matter of law.

---

[3] The probate court's conclusion that the consent judgment was unenforceable against the Estate was redundant because the clear terms of the Coblentz agreement had already rendered the consent judgment unenforceable against the Estate.

[4] Although we need not address this issue in reaching our decision, we note that there are many types of bad-faith causes of action that do not require the insured to be exposed to an excess judgment at the time a bad-faith claim is filed. See Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893, 899-901 (Fla. 2010).

Reyes and Infinity entered into a stipulation pending this appeal voluntarily dismissing the breach of contract claim in the complaint without prejudice. Thereafter, the circuit court entered a final judgment, and Reyes timely appealed. We have consolidated the two appeals from the circuit court and probate court orders.

## ANALYSIS

### 1. The Probate Court's Orders

Infinity moved to intervene pursuant to Florida Rule of Civil Procedure 1.230. Rule 1.230, however, does not apply to the probate proceedings in this case because Florida Probate Rule 5.010 precludes the application of the Florida Rules of Civil Procedure unless provided for within the Florida Probate Rules. The only Florida Probate Rule incorporating rule 1.230 is rule 5.025(d)(2), which states that in an **adversary probate proceeding**, "[t]he Florida Rules of Civil Procedure govern, except for rule 1.525." There is no equivalent probate rule that would allow the application of rule 1.230 in **non-adversary probate proceedings**. It is, therefore, clear that in a non-adversary proceeding in probate court, rule 1.230 does not govern, and because the Estate's probate proceedings were dormant and non-adversarial when Infinity moved to intervene, Infinity could not rely on rule 1.230 to intervene in the probate proceedings. Accordingly, it was reversible error for the probate court to grant Infinity's motion to intervene pursuant to rule 1.230. See

7

Zayas-Hood v. Jusino, 44 So. 3d 626 (Fla. 1st DCA 2010) (reversing the probate court's order suspending a prior order and holding that Florida Rule of Civil Procedure 1.540 was not available in a non-adversary probate proceeding because it was not provided for within the Florida Probate Rules).

Were it not for preservation and waiver issues, we would have reversed the probate court's order granting Infinity's motion to intervene based on rule 5.010 alone.[5] However, Reyes failed to properly preserve this error for appeal. Reyes failed to raise this rule 5.010 argument before the probate court and also failed to

_____

[5] The dissent argues that, while a rule 1.230 motion to intervene is not typical in probate court, Infinity only filed the motion because Reyes's counsel and the personal representatives failed to comply with the proper probate procedures by failing to designate Infinity as an interested party and by failing to notify Infinity (as an interested party) of Reyes's negligence lawsuit and the Coblentz agreement. Thus, the dissent opines that Infinity would not have needed to file a motion to intervene to contest the bad-faith litigation had the proper procedures been complied with because Infinity would have already known about the negligence suit and settlement.

First, we note that there is no exception in rule 5.010 that would allow Infinity to use the Florida Rules of Civil Procedure based upon the personal representatives' failure to comply with the proper procedures. Thus, the dissent's argument is legally irrelevant. Second, contrary to the dissent's suggestion, there is no indication in the record that Infinity was surprised by Reyes's negligence lawsuit. In fact, Infinity concedes in its answer brief that it received notice of Reyes's negligence lawsuit because it admits that the Estate tendered the defense of the negligence lawsuit to Infinity, and Infinity refused to provide a defense prior to the execution of the Coblentz agreement. If Infinity was concerned about its exposure to a subsequent bad-faith suit, it should have defended the Estate. "While an insurance company is within its rights in a thorough investigation to determine whether the accident in question comes within coverage of its policy, the company acts at its peril in refusing to defend its insured and will be held responsible for the consequences." Gallagher v. Dupont, 918 So. 2d 342, 347 (Fla. 5th DCA 2005).

raise it in her initial brief. Because Reyes failed to object to the applicability of rule 1.230 in the probate proceedings, we have evaluated the probate court's order granting intervention by examining the law relating to rule 1.230 and find that even if rule 1.230 applied, the probate court erred by granting Infinity's motion to intervene where Infinity's interest was not already at issue in the proceedings.

Florida Rule of Civil Procedure 1.230 grants courts broad discretion when considering motions to intervene, and it provides as follows: "Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion." However, "the trial court's discretion is not unbounded." Grimes v. Walton Cnty., 591 So. 2d 1091, 1093-94 (Fla. 1st DCA 1992). Trial courts are required to consider whether the prospective intervenor has an interest in the proceedings. Union Cent. Life Ins. Co. v. Carlisle, 593 So. 2d 505, 507 (Fla. 1992). "In order for a party to intervene, its interest must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." Omni Nat'l Bank v. Georgia Banking Co., 951 So. 2d 1006, 1007 (Fla. 3d DCA 2007) (internal quotation omitted).

Importantly, a party's asserted interest must **already** be at issue in the proceedings when the party seeks to intervene. <u>Carlisle</u>, 593 So. 2d at 507 (holding that "the interest must be that created by a claim to the demand in suit or some part thereof . . . which is the subject of litigation") (quoting <u>Morgareidge v. Howey</u>, 78 So. 14, 15 (Fla. 1918); <u>Y.H. v. F.L.H.</u>, 784 So. 2d 565, 568 (Fla. 1st DCA 2001)); <u>84 Lumber Co. v. Cooper</u>, 656 So. 2d 1297, 1299 (Fla. 2d DCA 1994) (stating that "intervention under [rule 1.230] assumes an interest in pending litigation which shall be in subordination to, and in recognition of, the propriety of the main proceeding") (internal quotation omitted). Additionally, a contingent interest in the proceedings, as opposed to a direct and immediate interest, will not justify a party's intervention. <u>Harbor Specialty Ins. Co. v. Schwartz</u>, 932 So. 2d 383, 387 (Fla. 2d DCA 2006); <u>Grimes</u>, 592 So. 2d at 1094 (holding that the trial court abused its discretion by granting a motion to intervene where the intervenors "would not stand to gain or lose by direct legal operation and effect of the judgment" in the action).

In the instant case, Infinity's interest regarding the validity of the <u>Coblentz</u> agreement was not already at issue before the probate court at the time Infinity moved to intervene. Infinity alleged that it had an interest in the probate proceedings because its rights in the bad-faith lawsuit would be affected by the validity of the <u>Coblentz</u> agreement. However, as stated above, when Infinity

10

moved to intervene, there were no adversarial proceedings in the probate court, the probate court was not considering the validity of the <u>Coblentz</u> agreement, and there was no attempt to enforce the consent judgment in the probate court—nor could there be based on the covenant in the <u>Coblentz</u> agreement not to enforce the consent judgment against the Estate. Thus, when Infinity moved to intervene for the purpose of attacking the personal representatives' authority to enter into the <u>Coblentz</u> agreement, Infinity was injecting a new issue into the proceedings. This it could not do. <u>See</u> <u>Envtl. Confederation of S.W. Fla., Inc. v. IMC Phosphates, Inc.</u>, 857 So. 2d 207, 211 (Fla. 1st DCA 2003) (finding that an intervenor may not inject a new issue into the case and must accept the record and pleadings as they exist in the litigation).

We, therefore, find that under both Florida Probate Rule 5.010 and Florida Rule of Civil Procedure 1.230, the probate court abused its discretion by granting Infinity's motion to intervene. We also recognize the rule that if "it was error to allow intervention, it [will also be] error to allow the intervenors to file their motion . . . and then grant the motion," <u>Grimes</u>, 592 So. 2d at 1094-95. Thus, because it was error to allow Infinity to intervene, it was also error to allow Infinity to file its motion to determine and to subsequently adjudicate the motion.

However, even if we had found that Infinity's motion to intervene was properly before the probate court, we would have concluded that the probate court

erred by allowing Infinity to raise defenses that it could have raised if it had defended the Estate from Reyes's negligence lawsuit prior to the entry of the Coblentz agreement and the consent judgment. As will be discussed more fully in the next section, when an insurer refuses to defend its insured from a lawsuit, and the insured later settles the suit by entering into a Coblentz agreement, the insurer is precluded from relitigating the issue of its insured's liability in subsequent proceedings. Gallagher v. Dupont, 918 So. 2d 342, 348 (Fla. 5th DCA 2005); Ahern v. Odyssey Re (London) Ltd., 788 So. 2d 369, 372 (Fla. 4th DCA 2001). Accordingly, Infinity was absolutely prohibited from raising any defenses on behalf of its insured in the probate court's proceedings that it could have raised had it chosen to defend the Estate from Reyes's negligence lawsuit. Infinity's arguments to the probate court regarding the effect of the time-bars in the probate code on the validity of Reyes's lawsuit is a defense that should have properly been raised when Reyes's lawsuit against the Estate was still pending. Therefore, the probate court erred by determining the authority of the personal representatives to enter into the Coblentz agreement because its order was based upon defenses that Infinity was barred from raising as a matter of law.[6]

_____

[6] Although we have reversed the probate court's order granting Infinity's motion to intervene on procedural and waiver grounds, we briefly respond to an issue raised in the dissent that was not raised by the probate court or any of the parties. The dissent suggests that section 733.708, Florida Statutes (2011), governs a personal representative's authority to enter into a settlement agreement. Thus, the dissent argues that pursuant to section 733.708, a personal representative is required to

12

## 2. **The Circuit Court's Order**

We review the trial court's order granting Infinity's motion for summary judgment in the bad-faith lawsuit de novo. Geico Gen. Ins. Co. v. Rodriguez, 155 So. 3d 1163, 1167 (Fla. 3d DCA 2014). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

As stated above, Reyes and the Estate entered into a consent judgment pursuant to a Coblentz agreement. Reyes subsequently sought to enforce the consent judgment against Infinity by filing a bad-faith action against Infinity. Therefore, we analyze the order granting summary judgment to determine whether the circuit court correctly applied the law pertaining to the enforcement of consent judgments in the context of a Coblentz agreement.

In order to enforce a consent judgment entered pursuant to a Coblentz agreement, the assignee must bring an action against the insurer and prove: (1)

---

obtain approval from the probate court prior to settling a claim. We disagree. The dissent misapprehends the purpose and effect of section 733.708, which provides that a personal representative may avoid personal liability when compromising a claim against the estate if the personal representative obtains a court order approving the compromise. "**The failure to secure such an order does not preclude a compromise** however, the personal representative remains subject to the possibility of liability." Sec. Ins. Co. v. Estate of Stillson, 397 So. 2d 1206, 1207 (Fla. 1st DCA 1981) (emphasis added). Thus, in addition to the fact that this argument was not raised by the parties either below or on appeal, this argument is unavailing on the merits.

insurance coverage, (2) the insurance company wrongfully refused to defend its insured, and (3) the settlement was reasonable and made in good faith. Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So. 3d 174, 180 (Fla. 4th DCA 2015); Gallagher, 918 So. 2d at 348; Indep. Fire Ins. Co. v. Paulekas, 633 So. 2d 1111, 1114 (Fla. 3d DCA 1994).

It is axiomatic that a Coblentz agreement establishes the insured's liability. Mid-Continent Cas. Co., 169 So. 3d at 181-82 ("The notion is that the settlement establishes the insured's liability, but not the insurer's obligation of coverage."). The subsequent entry of a consent judgment is conclusive against the insurer as to all matters determined in the judgment. Gallagher, 918 So. 2d at 348. Thus, **in the proceedings to enforce the consent judgment, the insurer is not permitted to assert any defense that it could have raised in the underlying lawsuit between the assignee and the insured**. Indep. Fire Ins. Co., 633 So. 2d at 1114 ("[The insurer] was not permitted to assert all of the defenses which could have been asserted in the underlying cause of action . . . ."); Gallagher, 918 So. 2d at 348 (holding that "the insured's liability has been established by the settlement, and the insurer may not later relitigate the issue").

The circuit court's order granting summary judgment was premised, as was the probate court's order to determine, on Infinity's argument that Reyes's negligence lawsuit against the Estate was time-barred pursuant to the probate code.

The circuit court's analysis, like the probate court's analysis, however, overlooked the fact that the Coblentz agreement and the consent judgment conclusively established that the Estate was liable, and that Infinity was barred from raising any of the defenses that it could have raised had it chosen to defend the Estate in the negligence lawsuit. Because Infinity could have raised its arguments with regard to the probate code if it had defended the Estate in the negligence lawsuit proceedings, Infinity is barred from subsequently raising them as a defense in order to contest the validity of the consent judgment in the probate court and in the circuit court bad-faith lawsuit. We therefore find that the circuit court erred when it granted summary judgment in favor of Infinity based on Infinity's legally barred probate code defenses.

In response to the abundant case law precluding insurers from raising defenses in a subsequent proceeding, which it had the opportunity to raise, but failed to raise in the prior proceeding because, after having received notice, the insurer declined to defend the insured, the dissent seizes upon language in May v. Illinois National Insurance Co., 771 So. 2d 1143 (Fla. 2000), to argue that as to this **particular defense**, this well-developed body of law does not apply. However, that is not what May holds.

Although the Florida Supreme Court in May held that section 733.702 "is a statute of limitations that cannot be waived in a probate proceeding by failure to

15

object to a claim on timeliness grounds," and section 733.710 "is a jurisdictional statute of nonclaim that is not subject to waiver or extension in a probate proceeding," May, 771 So. 2d at 1145, the operative words in both findings are "**in a probate proceeding**." (emphasis added).   As the Court clearly explained in its footnote following these findings, its holding was limited to **actions brought in probate court against the estate**:

> As with section 733.702, we determine that **an estate may waive the time period set forth in section 733.710 in a separate action outside of the probate proceedings**.   However, unlike section 733.702, a creditor that has obtained a judgment in a separate action cannot recover **against the estate** unless the creditor has filed a claim in the probate proceedings within two years of the decedent's death. This is so because the probate court lacks the authority to extend the time period set forth in section 733.710.

Id. at n.12 (emphasis added).  It is thus clear that the Estate in the instant case had the authority to "waive the time period set forth in section 733.710 in a separate action outside of the probate proceedings," which was in the personal injury lawsuit in the circuit court.   However, any judgment obtained by the plaintiff (Reyes) could not be levied against the Estate in the probate proceedings because no claim had been filed in probate court during the limitations period.   Reyes, however, is not attempting to seek redress against the Estate in the probate court. The Estate entered into a Coblentz agreement with Reyes wherein the parties agreed to the entry of a consent judgment, Reyes agreed not to execute the judgment against the Estate, and the Estate assigned its rights to Reyes to pursue a

16

bad-faith lawsuit against Infinity for failing to defend the Estate in the negligence lawsuit.

Had Infinity elected to defend the Estate, as it was asked, it could have objected to the entry of the Coblentz agreement and the consent judgment, raised the failure of Reyes to timely file his claim in probate court, asserted defenses including the statutory limitations bar to recovery against the Estate, and as counsel for the Estate simply have refused to the entry of both. But, Infinity declined to defend the Estate, the Estate waived the time period set forth in section 733.710 in the circuit court negligence lawsuit, and assigned its rights to Reyes to pursue the Estate's bad-faith claim against Infinity in a totally separate circuit court action. While there are many defenses which may be available to Infinity in the bad-faith lawsuit, including its coverage defense, it is too late for Infinity to now appear in the negligence lawsuit it declined to defend in order to raise defenses it could have raised had it agreed to defend the Estate. And, as already addressed, under both Florida Probate Rule 5.010 and Florida Rule of Civil Procedure 1.230, the probate court had no authority to allow Infinity to intervene for the purpose of raising these defenses.

The dissent also relies on Wald v. State Farm Mutual Automobile Insurance Co., 2013 WL 9636854 (M.D. Fla. July 25, 2013). This Court is not bound by a decision rendered by the United States District Court, and Wald is distinguishable.

17

Wald is distinguishable because it did not involve a Coblentz agreement. It is also unpersuasive because the United States District Court failed to consider footnote 12 in May.

In applying Florida law, the Fifth Circuit in Coblentz held that an insurer that wrongfully declines to defend its insured is barred from challenging a judgment entered against its insured absent a finding of fraud or collusion.

> Where either an indemnitor or liability insurer has notice of a proceeding against his indemnitee or insured, and is afforded an opportunity to appear and defend, a judgment rendered against the indemnitee or insured, in the absence of fraud or collusion, is conclusive against the indemnitor or insurer as to all material matters determined therein.

Coblentz, 416 F.2d at 1062-63. In Coblentz, the insurance company argued that since the judgment did not legally obligate its insured to pay anything, it could not obligate the insurance company to pay anything. In rejecting the insurer's argument, the Coblentz court held that the insurer had been afforded the opportunity to defend the action; however, it had repudiated its obligation to defend, and thus the judgment obtained, if obtained without fraud or collusion, was conclusive against the insurer. Id. at 1063.

We conclude that although the consent judgment in the instant case is not enforceable against the Estate based on the express terms of the Coblentz agreement and because Reyes did not file a claim against the Estate in the probate court within the two-year limitations period, it is enforceable against Infinity if

18

coverage is established and there was no fraud or collusion. Our conclusion is fully supported by not only footnote 12 in May, but also by the Fourth District Court of Appeal's decision in Pezzi v. Brown, 697 So. 2d 883 (Fla. 4th DCA 1997).

In Pezzi, the Fourth District held that the plaintiff's failure to comply with sections 733.702 and 733.710 did not place limitations on the plaintiff's ability to recover against the decedent's insurer. Id. at 886. Specifically, the Fourth District held that the jurisdictional limitation under section 733.710 "is specific to the decedent's estate, the personal representative, and the beneficiaries; **the limitation does not extend to the decedent's insurance policy.**" Id. at 885 (emphasis added).

In reaching this conclusion, the Fourth District was "guided by the principle that statutes restricting access to the courts must be narrowly construed in a manner favoring access." Id. at 886 (citations omitted). Thus, the court held that while:

> Section 733.10 represents a decision by the legislature that 2 years from the date of death is the outside limit to which a decedent's estate in Florida should be exposed by claims on the decedent's assets . . . [t]here is no indication that section 733.10 represented a legislative decision to undermine the rights of plaintiffs to recover under tortfeasors' insurance policies.

Id. at 886 (quotations, citations, and emphasis omitted). In support of its interpretation of sections 733.702 and 733.710, the court noted that the purpose of these time limitations is "to promote 'the public policy of providing for the speedy

19

settlement of estates' in order that 'the payment of claims and the distribution to beneficiaries [not] be substantially delayed or disrupted.'" Id. at 886 (quoting Spohr v. Berryman, 589 So. 2d 225, 228 (Fla. 1991)).

In conclusion, the Fourth District in Pezzi held that, because the plaintiff was not seeking recovery from the estate's assets, the personal representative individually, or the beneficiaries, "[n]either section 733.702 nor section 733.710 precludes plaintiffs from bringing this cause of action and recovering to the extent that [the deceased tortfeasor] was covered by liability insurance." Pezzi, 697 So. 2d at 886.

We note that May, which was decided by the Florida Supreme Court well after the Fourth District Court of Appeal decided Pezzi, did not overrule Pezzi, and in fact, based upon footnote 12 in May, the Florida Supreme Court apparently agreed with the Pezzi court.

The Estate's interests are protected twice over in this case. The Coblentz agreement protects the assets of the Estate by preventing Reyes from recovering against the Estate even without the application of section 733.710. A separate bad-faith lawsuit against Infinity poses no threat to the Estate, its beneficiaries, or its creditors. If Reyes ever attempts to recover from the Estate, then her claim will be barred not only by the Coblentz agreement, but also by the effect of section 733.710.

20

## CONCLUSION

In conclusion, we reverse the probate court's order permitting Infinity to intervene in the Estate's probate proceedings because Infinity's interest was not at issue before the probate court prior to the filing of the motion to intervene. Because the probate court erred by permitting Infinity to intervene, we also reverse the probate court's subsequent order on Infinity's motion to determine. We also reverse the probate court's order on Infinity's motion to determine because it was based on defenses that Infinity was prohibited from raising as a matter of law. Lastly, we reverse the circuit court's order granting Infinity's motion for summary judgment and the subsequently entered final judgment in the bad-faith lawsuit because they were also premised on defenses that Infinity could have raised but failed to raise in the underlying litigation that led to the Coblentz agreement.

Reversed and remanded.

LAGOA, J., concurs.

21

<u>In re Estate of Jorge Luis Arroyo, Jr.; Reyes v. Infinity Indemnity Ins. Co.</u>
Cases Nos. 3D15-194 & 3D15-183 (Consolidated)

SALTER, J. (dissenting).

I respectfully dissent. The circuit court orders regarding the probate proceeding and the final judgment in the bad faith insurance lawsuit were correct and must be affirmed. Well-settled statutory and decisional rules governing claims bar dates, and those governing the rights and duties of personal representatives in the administration of estates, are controlling.

This is not the first time that a claimant has been exposed to a harsh outcome in a tragic case because of the failure to comply with the procedural requirements of the Florida Probate Code and Florida Probate Rules. Those time and procedural requirements must be upheld, however, because they were enacted by the Florida Legislature for the protection of decedents' estates, personal representatives, creditors, obligors, and beneficiaries.

I.     <u>The Statutes</u>

22

The bad-faith insurance claim against Infinity Indemnity is founded on the claim of Ms. Reyes[7] against Infinity Indemnity's insured, the decedent, Jorge Arroyo. The insurer has properly conceded, and the applicable statutes provide, that the claim against Mr. Arroyo's estate could be settled without filing a timely written claim in the probate court under a narrow exception: "[t]o the limits of casualty insurance protection only, any proceeding to establish liability that is protected by the casualty insurance." § 733.702(4)(b), Fla. Stat. (2013).

That provision is eminently logical; a timely claim which seeks nothing from the estate in excess of the coverage limits of an insurance policy covering the decedent and the claim is in substance a claim against the policy, not a claim against the decedent, the estate, or the personal representative. Because other creditors of the estate having no recourse to the policy, and beneficiaries of the estate, should not be adversely impacted by the net result, there is no necessity to prohibit the claimant from prosecuting a proceeding to establish the liability of the insurer "to the limits of casualty insurance protection." Id.

The exception does not apply, however, to a claim against the deceased insured in excess of the policy limits, because such a claim, if timely and allowed,

---

[7] Delia Reyes sustained traumatic and incapacitating injuries in the vehicle collision that is at the center of the case. In the litigation involved in this appeal, she is represented as the plaintiff by her mother (Marta Reyes) as guardian, and by a court-appointed guardian for her two children. We refer to the plaintiffs in the cases below and the appellants in this appeal collectively as "Ms. Reyes."

might diminish estate assets. Accordingly, a claim for more than policy proceeds must be timely filed in the estate. Section II of this dissent addresses the Florida and federal cases enforcing these statutory requirements.

And the narrow exception provided by section 733.702(4)(b) is followed by section 733.702(5), reiterating that nothing in section 733.702 "shall extend the limitations period set forth in s. 733.710." Section 733.710, in turn, establishes an absolute two-year time limitation, measured from the death of the decedent, for the filing or establishment of a claim against the decedent's estate or the personal representative. The statutory deadline is jurisdictional and self-executing.

In the present case, there is no dispute that the date of Mr. Arroyo's death (and Ms. Reyes' catastrophic injuries) was October 9, 2009. The lawsuit by Ms. Reyes against the deceased insured's estate was filed in 2011, but no written claim against his estate was ever filed. The consent settlement agreement and assignment entered into by Ms. Reyes and the Arroyo estate pursuant to Coblentz v. American Surety Co. of New York, 416 F.2d 1059 (5th Cir. 1969), were signed in January 2013, and the consent final judgment in favor of Ms. Reyes and against the estate was docketed in April 2013. These occurrences took place over three years after Mr. Arroyo died and without preliminary notice to interested persons or consideration by the probate court in the estate proceedings. His estate attempted

24

to accept liability for a claim which was, as a matter of law, unenforceable against the estate.

The narrow exception of section 733.702(4)(b) is inapplicable in this case because the estate's liability for $30,000,000.00 vastly exceeded "the limits of casualty insurance protection" under the policy (a face amount of $10,000.00, if the estate or Ms. Reyes prevailed regarding coverage). Under the unambiguous statutory provisions governing the filing of claims against a decedent and the decedent's estate for an amount exceeding "the limits of casualty insurance protection," the Coblentz agreement was untimely and barred.

The probate statutes governing timeliness are not the only restrictions applicable to the present case. Section 733.706 specifies that "[c]laims on all judgments against a decedent shall be filed in the same manner as other claims against estates of decedents." The consent final judgment in the present case was not filed as a claim in the estate and was not brought to the attention of the probate court until Infinity Indemnity did so in its motion to invalidate Ms. Reyes' claim against the estate.

> Finally, an "interested person" under the Florida Probate Code is
>
> any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved. . . . The meaning, as it relates to particular persons, may vary from time to time and must be determined according to the particular purpose of, and matter involved in, any proceedings.

25

§ 731.201(23), Fla. Stat. (2013). In the present case, the probate court correctly determined that Infinity Indemnity was an interested person.

II.    Applicable Case Law

Regarding the exception for claims against an insured decedent, section 733.702(4)(b), the Supreme Court of Florida has left no doubt that the exception does not extend to extra-contractual bad faith claims above policy limits; an unfiled claim by a plaintiff may be pursued "to establish liability of the decedent or personal representative and recovering up to the limits of the applicable insurance coverage." Pezzi v. Brown, 697 So. 2d 883, 885 (Fla. 1997) (emphasis added); see also Kent Insurance Co. v. Estate of Atwood, 481 So. 2d 1294, 1295 (Fla. 1st DCA 1986).

In May v. Illinois National Insurance Co., 771 So. 2d 1143 (Fla. 2000), the Supreme Court of Florida addressed the application of two of the probate statutes, sections 733.702 and 733.710, in the context of a bad faith insurance case.[8] Mr. May was the administrator ad litem—functionally equivalent to the personal representative for Mr. Arroyo's estate in the present case—for the estate of Mr. Bradley. Mr. Bradley was the driver in a motor vehicle collision in which he died. His insurer was Illinois National Insurance Company (INIC).

---

[8] The opinion in May arose from a federal case. The United States Court of Appeals for the Eleventh Circuit certified the controlling issues of Florida law (the proper application of sections 733.702 and 733.710) to the Supreme Court of Florida.

Mr. and Mrs. Prockup were in a vehicle involved in the collision with the vehicle driven by Mr. Bradley. Mr. Prockup sustained non-fatal injuries in the accident, but his wife died at the scene of the collision. Mr. Prockup, individually and as personal representative for the estate of his wife, sued the owner of the vehicle (Mr. Bradley's niece) and Mr. May, as personal representative of Mr. Bradley's estate. Mr. Prockup requested that the Florida probate court appoint Mr. May administrator ad litem of the Bradley estate, as it became clear that no personal representative had been appointed and that there was uncertainty regarding the existence of a will.

INIC did not provide a defense and disputed coverage as to the Prockups' lawsuit against Mr. Bradley's estate and Mr. May. Following a stipulation by the estate and Mr. May to liability in that lawsuit, a trial on damages culminated in a judgment against the vehicle owner and Mr. May (for the estate of Mr. Bradley) for $1,106,522.70. Id. at 1145-46. Mr. Prockup later commenced a bad faith action against INIC, which INIC removed to the U.S. District Court for the Northern District of Florida.[9] INIC asserted that the Bradley estate had no liability to the Prockups because the Prockups had not filed timely claims in the estate within the times specified in sections 733.702 and 733.710. "After considering the parties' arguments, the federal district court granted summary judgment in favor of

---

[9] Before removing the case to federal court, INIC paid the policy limits plus interest into the registry of the state circuit court.

27

INIC.  In granting INIC's motion, the trial court determined that Mr. Prockup had failed to timely file a sufficient statement of claim in the Bradley Estate proceedings in accordance with the Florida Probate Code." Id. at 1149.

The judgment was appealed to the U.S. Court of Appeals, which then certified to the Supreme Court of Florida this question:

> WHETHER SECTION 733.702 AND SECTION 733.710 OF THE FLORIDA STATUTES CONSIDERED SEPARATELY AND/OR TOGETHER OPERATE AS STATUTES OF NONCLAIM SO THAT IF NO STATUTORY EXCEPTION EXISTS, CLAIMS NOT FORMALLY PRESENTED WITHIN THE DESIGNATED TIME PERIOD ARE NOT BINDING ON THE ESTATE, OR DO THEY ACT AS STATUTES OF LIMITATIONS WHICH MUST BE PLEADED AND PROVED AS AFFIRMATIVE DEFENSES IN ORDER TO AVOID WAIVER.

Id. at 1145.

The Supreme Court of Florida held that section 733.702 "is a statute of limitations that cannot be waived in a probate proceeding by failure to object to a claim on timeliness grounds," while section 733.710 "is a jurisdictional statute of nonclaim that is not subject to waiver or extension in a probate proceeding." Id.[10]

May was carefully considered and applied in a more recent federal case in Florida, Wald v. State Farm Mut. Auto. Ins. Co., 3:11–cv–1112–J–32TEM, 2013

---

[10] In May, the Court held that the third-party bad faith claimant had filed a sufficient claim for purposes of section 733.703 by filing pleadings regarding the wrongful death action against the estate in the probate case within two years of the insured's death.  No such timely pleadings were filed by Ms. Reyes in the estate of Mr. Arroyo in the present case.

WL 9636854 (M.D. Fla. July 25, 2013), aff'd, 556 F. App'x 933 (11th Cir. 2014). The U.S. District Court granted the insurer's motion for summary judgment, concluding that "May's reasoning applies to plaintiffs in third-party bad faith actions like Wald." Id. at *7. In Wald, as in the present case, the time-barred, extinguished claim of the plaintiff against the deceased insured's estate could not be resuscitated by a Coblentz agreement and an assignment to a third-party, because the claim exceeded the policy limits.

In the case at hand, the trial court correctly applied the statutes, the May and Wald decisions, and numerous other authorities in a seventeen-page, carefully-reasoned opinion granting Infinity Indemnity's motion for summary judgment as to Ms. Reyes' bad faith claim.

    III.    The Majority's Waiver Argument

        A.    Standard of Review

While the majority is correct that the trial court's order granting Infinity Indemnity's motion for summary judgment is reviewed de novo, it has ignored the jurisdictional effect of the nonclaim statute, section 733.710, as determined in May. That jurisdictional infirmity, as to which there is no issue of material fact in this case, entitled Infinity Indemnity to summary judgment as a matter of law under the case cited by the majority. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

## B. The Extent of the Insurer's Alleged Waiver

The majority maintains that Infinity Indemnity lost the right to raise not only coverage issues under the policy, but also any defense under the nonclaim statute and the Probate Code: "[W]hen an insurer refuses to defend its insured from a lawsuit, and the insured later settles the suit by entering into a Coblentz agreement, the insurer is precluded from relitigating the issue of its insured's liability in subsequent proceedings."[11] The cases cited for this proposition, however, do not address a deceased insured's estate's purported settlement of an untimely, preclusively barred claim against the estate.

In Gallagher v. Dupont, 918 So. 2d 342 (Fla. 5th DCA 2005), a third-party claimant filed a lawsuit against a state employee. When the employee died, the State refused to continue the defense of the lawsuit on behalf of the employee's estate. The third-party claimant then entered into a Coblentz agreement with the estate and obtained a consent judgment against the State. But although the State (through its risk management fund) "lost the chance to litigate the factual issues" relating to the underlying lawsuit, these issues involved "duty, breach, and proximate causation," not the question of whether the State was under an obligation to provide a defense to a deceased state employee's estate. Id. at 348-49. For that reason and others, the appellate court remanded the case to the trial

---

[11] Majority op. at 12; accord Majority op. at 14.

30

court for further proceedings. Gallagher does not preclude an insurer from defending itself on the grounds that the estate of its insured is immune from suit.

In Ahern v. Odyssey Re (London) Ltd., 788 So. 2d 369 (Fla. 4th DCA 2001), the insured was Medi-Trans, Inc., the insurer was Odyssey Re, and the third-party claimant was the estate of a passenger who died in a collision while in a van operated by Medi-Trans. Odyssey Re declined to defend Medi-Trans against claims brought by the personal representative of the estate of the passenger. Medi-Trans then entered into a Coblentz agreement with the personal representative, a consent judgment, and an assignment of Medi-Trans' rights against Odyssey Re to the personal representative.

The Fourth District held that in refusing to provide a defense to Medi-Trans, "Odyssey lost its chance to litigate the factual issues surrounding duty, breach and proximate causation which were pivotal to the ultimate resolution of the legal principles involved in [the deceased passenger's] claims." Id. at 373. The probate two-year nonclaim statute, section 733.710, is not an issue relating to an insured's duty, breach, or proximate causation vis-à-vis a third-party claimant. Instead, it is a statutory bar precluding a third-party claimant from pursuing such a claim at all, if untimely, against an estate. In Ahern, the insured was a corporation, not an estate, and the effect of the nonclaim statute was not at issue.

In another case cited by the majority, Independent Fire Insurance Co. v. Paulekas, 633 So. 2d 1111 (Fla. 3d DCA 1994), the insured survived the accident for which he was alleged to have been responsible. The opinion did not involve an insured's estate or the Florida Probate Code, much less a jurisdictionally time-barred claim.

Finally, the majority's reliance on Mid-Continent Casualty Co. v. Royal Crane, LLC, 169 So. 3d 174 (Fla. 4th DCA 2015), is equally misplaced. The case reversed a final judgment against an insurer following a Coblentz agreement and a third-party assignee's claim against the insurer for its refusal to defend. More significantly, the case does not involve a claim against the estate of a deceased insured or the effect of the nonclaim statute, section 733.710.

Simply stated, there is no Florida case, or decision by a federal court in Florida applying Florida law, allowing an estate to consent to a judgment for an alleged claim that was not filed in the estate within (a) the limitations period of section 733.702, and (b) two years of the insured decedent's death, the claims bar period specified by section 733.710. As already noted, perhaps repeatedly for emphasis, section 733.710 is a jurisdictional statute of nonclaim. The majority's attempt to supply jurisdiction contrary to a controlling statute and controlling Florida case law cannot withstand careful scrutiny.

IV.    The Insurer's Motion in the Probate Case

32

Infinity Indemnity separately and successfully moved the probate court to determine that the personal representative of the estate had no authority to enter into the Coblentz agreement with Ms. Reyes. The probate judge correctly agreed to hear the insurer's objection to the time-barred consent judgment, finding that "the Estate had absolute immunity from Reyes's claim because Reyes failed to file a claim against the Estate in this matter and, therefore, said claim was extinguished." The probate court also correctly held that the consent judgment against the estate was not valid or enforceable against the estate because it "was not filed in the Estate, violating section 733.706, Florida Statutes."

Ms. Reyes argues, and the majority apparently agrees, that the probate framework has no application here because Infinity Indemnity denied coverage and thereby waived its rights to object to Ms. Reyes' claim against the estate of Mr. Arroyo. Ms. Reyes has also persuaded the majority that the probate court abused its discretion when it allowed the insurer to file a motion in the probate proceedings so late in the process, and by "injecting a new issue into the proceedings," based on a "contingent interest in the proceedings, as opposed to a direct and immediate interest."[12] This latter assessment erroneously applies case law applicable to intervention in non-probate civil cases under Florida Rule of Civil Procedure 1.230.

---

[12] Majority op. at 10-11.

Rule 1.230, "Interventions," does not apply to a probate proceeding in the same way it applies in a civil case outside the probate division. First, Florida Probate Rule 5.010 specifies that "[t]he Florida Rules of Civil Procedure apply only as provided herein." One such incorporation of the Florida Rules of Civil Procedure relates to adversary proceedings, as detailed in Florida Probate Rule 5.025. See Fla. Prob. R. 5.025(d)(2). Another group of civil rules (not including Rule 1.230), regarding discovery and subpoenas, is specifically incorporated by Florida Probate Rule 5.080(a).

Second, joinder and notice in an estate proceeding are quite different than in a non-probate adversarial civil case. The overarching objective of the Florida Probate Code, chapters 731-735, Florida Statutes (2013), is the orderly administration of the assets and liabilities of an estate, such that creditors of the decedent, claims and other property of the decedent, and beneficiaries of the decedent are accorded their rights under Florida law, whether in intestacy or pursuant to a valid last will and testament.

In furtherance of that objective, the Florida Probate Code obligates the personal representative to provide notices to several categories of interested parties, such as creditors, obligors of the decedent, and prospective beneficiaries. This is accomplished through actual notice and via publication. See, e.g., §§ 733.212, 733.2121, Fla. Stat. (2013). Interested persons who have not received

notice via these provisions, but become aware of the estate proceedings, may request and obtain notice of further proceedings, and copies of pleadings, by filing a written request and serving a copy on the attorney for the personal representative. Fla. Prob. R. 5.060.

The Infinity Indemnity policy at issue in the present case was an asset of Mr. Arroyo's estate. The estate was still open and subject to further administration at the time Infinity Indemnity filed its motion for determination of the personal representatives' right to enter into the 2013 settlement agreement. Under section 731.201(23), quoted in pertinent part in section I of this dissent, Infinity Indemnity was an "interested person" entitled to be heard by the probate court with respect to an alleged claim above policy limits. The majority incorrectly implies that the parties' references to Rule 1.230 and the term "intervention" somehow deprived Infinity Indemnity of standing to be heard.

But in the present case, whether through inadvertence or design, Infinity Indemnity was not designated as an interested party by the personal representatives (Mr. Arroyo's parents) following the filing of their petition for administration in January 2011. The estate was the owner of the Infinity Indemnity policy and successor to the insured, but any rights or obligations under that policy were not listed in the petition or related filings.[13] The petition alleged that the nature and

---

[13] An insurance policy that is an asset of the estate, as here, should be included in the inventory or list of reported assets. In re Bernard's Estate, 183 So. 2d 715 (Fla.

approximate value of the assets in the estate are "unknown at this time and consist of a wrongful death action arising from the automobile accident in which decedent died."[14]

Nor did counsel for Ms. Reyes file a claim in the estate or, so far as the record reflects, notify Indemnity Insurance that Ms. Reyes was filing a civil case against the estate outside the probate proceeding without authorization from the probate court.[15] Further, the personal representatives did not comply with Florida Probate Rule 5.065(a) by filing "a notice when a civil action has been instituted by or against the personal representative."

Ms. Reyes' original lawsuit against the personal representatives was filed in the civil division five days after the petition for administration of the Arroyo estate was filed in the probate division, in 2011. Infinity Indemnity was not sued by Ms. Reyes based on the Arroyo estate's purportedly-assigned claim until June 2013, over two years later. Ms. Reyes' argument that Infinity Indemnity filed its motion

---

1st DCA 1966).

[14] The estate initially asserted claims against Ms. Reyes as a passenger based on her alleged interference with Mr. Arroyo's driving. The petition and pleadings filed before Infinity Indemnity's motion never made reference to a claim <u>by</u> Ms. Reyes against the decedent, the decedent's insurance policy, or Infinity Indemnity.

[15] Counsel for Ms. Reyes knew, based on correspondence in October and December 2009, that Infinity Indemnity had disclosed prior coverage under a policy allegedly cancelled before the date of the accident, and had denied coverage as of the date of the accident due to the alleged nonpayment of premiums.

36

too late in the probate proceedings ignores the fact that nothing was done in the probate proceeding from April 2011 through June 2013 to advise Infinity Indemnity of a claim by the estate or its assignee against Infinity Indemnity.

Ms. Reyes argues, nonetheless, that Ms. Reyes had no obligation to notify the probate court or interested parties in the estate proceeding, because others had no interest in the Infinity Indemnity insurance policy, and because Ms. Reyes was waiving any right to execute against the estate—in the Coblentz agreement—in return for the estate's assignment to Ms. Reyes of its rights against Infinity Indemnity. This argument fails, because it completely ignores the transparency and timing required by the Florida Probate Code. Other creditors, beneficiaries, and interested persons, not to mention the probate court itself, should be given an opportunity to understand the terms of an arrangement whereby the personal representatives propose to allow the entry of an untimely $30,000,000.00 claim against the estate and the assignment of the estate's claim against an insurer to that single claimant.

The majority argues that these requirements can be dispensed with because there were no other creditors of the estate who might have made claims against the estate and its insurance policy. Even if that is true in the present case, that rationale is not a sound basis for ignoring the statutes and rules that control probate administration.

37

The point of this recitation of facts and overview of probate proceedings is that "intervention" requiring affirmative acts by Infinity Indemnity is a departure from the norm contemplated by the Florida Probate Code and Florida Probate Rules. In probate proceedings, the estate and personal representative ordinarily are the initiators notifying known "interested persons" of everything from the opening of the estate to the appointment of the personal representative, to lawsuits against the estate, and to proposed settlements (among other developments affecting administration). In an ordinary estate case, it is not even necessary for an obviously-interested party like Infinity Indemnity to file a motion to intervene if the personal representative and claimants have complied with their obligations.

And even if we were to assess the probate court's order recognizing Infinity Indemnity's right to object to the 2013 settlement under the standards applicable to Rule 1.230 in a general civil case, our standard of review would be for an abuse of discretion, Barnhill v. Fla. Microsoft Anti-Trust Litig., 905 So. 2d 195 (Fla. 3d DCA 2005), liberally construed in favor of permitting a person claiming an interest in the proceeding to protect that person's rights, Grimes v. Walton County, 591 So. 2d 1091, 1094 (Fla. 1st DCA 1992). As detailed above, any delay in filing the motion and objections in the present case was not attributable to Infinity Indemnity, but rather (a) to the failure of the personal representatives to list the Infinity Indemnity policy as an asset of the estate and Ms. Reyes' lawsuit as a

38

potential liability of the estate, and (b) Ms. Reyes' failure to file a notice of her claim in the estate.

The probate court did not abuse its discretion in permitting Infinity Indemnity to claim "interested party" status in the still-open probate administration of Mr. Arroyo's estate. That court properly exercised its jurisdiction in determining that the estate had no authority to enter into the settlement agreement with Ms. Reyes, and that at the time the estate did so, the estate had "absolute immunity" from Ms. Reyes' claim.

V.  Conclusion

The trial judge in the civil division did not err in entering judgment against Ms. Reyes in the bad faith case. Ms. Reyes' original personal injury lawsuit against the Arroyo estate, her Coblentz agreement with the personal representative of that estate, the entry of the consent judgment in the lawsuit, and the estate's purported assignment to Ms. Reyes of the estate's rights of action against Infinity Indemnity were effected without compliance with the Florida Probate Code and Florida Probate Rules. As a result, those steps collectively created an invalid foundation upon which to base a bad faith action against Infinity Indemnity.

Similarly, the probate court did not abuse its discretion in granting Infinity Indemnity's motion for a determination regarding the estate's purported settlement. The court recognized that Infinity Indemnity was significantly affected by the

personal representatives' missteps and Ms. Reyes' circumvention of the probate court in orchestrating the bad faith lawsuit.  The probate court correctly held that Ms. Reyes failed to file a timely claim against the Arroyo estate and that the personal representative had no authority to enter into the Coblentz agreement and to allow the entry of the consent judgment.

For these reasons, I respectfully dissent.